870 F.2d 1559
 AMERICAN MARITIME TRANSPORT, INC., Plaintiff-Appellee,
v.
The UNITED STATES, Defendant-Appellee,
Aeron Marine Shipping Company, American Shipping, Inc. and
Archon Marine Company, Applicants for
Intervention-Appellants.
 No. 88-1510.
 United States Court of Appeals,
Federal Circuit.
 March 23, 1989.
 
 John P. Meade, O'Connor & Hannan, of Washington, D.C., argued for plaintiff-appellee. With him on the brief was George J. Mannina, Jr.
 Genevieve Holm, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for defendant-appellee. With her on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Assistant Director.
 Michael Joseph, Dyer, Ellis, Joseph & Mills, of Washington, D.C., argued for applicants for intervention-appellants. With him on the brief were Thomas L. Mills and Constantine G. Papavizas.
 Before MAYER and MICHEL, Circuit Judges, and NICHOLS, Senior Circuit Judge.
 MICHEL, Circuit Judge.
 
 
 1
 Aeron Marine Shipping Company, American Shipping, Inc. and Archon Marine Company (Aeron) appeal the Claims Court order of June 22, 1988, 15 Cl.Ct. 29 denying Aeron's motion for intervention as of right in an action between American Maritime Transport, Inc. (AMT) and the United States Maritime Administration. We affirm.
 
 Background
 
 2
 Aeron seeks to intervene in a lawsuit between AMT and the Maritime Administration about a shipping subsidy. Specifically, AMT claims entitlement to an "operating-differential subsidy" which is provided for in its contract with the Maritime Administration, and which is incorporated into the contract pursuant to section 603 of the Merchant Marine Act of 1936, 46 U.S.C.App. Sec. 1173 (1982).[1] The purpose of such subsidies is to provide financial assistance to U.S.-flag ships in international competition to make the U.S. ships price competitive. 46 U.S.C.App. Sec. 1172 (1982). Specifically, the contract provides that the Maritime Administration will pay AMT the subsidy for AMT vessels operating "in world-wide carriage of liquid and dry bulk cargo in the foreign ocean-borne commerce of the United States...." The subsidy is payable, however, only if the cargoes are "commercial."
 
 
 3
 The Maritime Administration determined that certain grain cargoes being carried by AMT vessels to Israel cannot be considered "commercial" since the grain cargoes are reserved for U.S.-flag vessels by the Government of Israel. Accordingly, AMT's vessels do not compete "commercially" with foreign-flag vessels for carriage of the grain, and thus cannot be said to need an operating-differential subsidy in order to meet foreign competition. AMT challenged in the Claims Court the Maritime Administration's interpretation of "commercial" cargo.[2]
 
 
 4
 Aeron sought to intervene as of right as provided by Claims Court Rule 24(a).[3] Rule 24(a) mandates intervention when:
 
 
 5
 [T]he applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 6
 Essentially, Aeron asserted, that because AMT will likely be in a better competitive position vis-a-vis Aeron if AMT's Israeli shipments were determined to be eligible for an operating-differential subsidy, Aeron has a cognizable interest in the outcome of the subsidies dispute between AMT and the Maritime Administration. Further, Aeron argued that disposition of the Claims Court action would possibly impede Aeron's ability to protect its interest, and that because of differences in their interests, the Maritime Administration cannot adequately represent Aeron's interest.
 
 
 7
 The Claims Court held that to intervene as of right Aeron must have a "direct, substantial, legally protectable interest in the proceedings," but that Aeron had "alleged nothing more than an indirect and contingent economic interest in this suit based upon the possibility of increased competition." The Claims Court also determined that Aeron's interests were being adequately represented by the Maritime Administration. Accordingly, the Claims Court denied Aeron's motion for intervention. Aeron appeals.
 
 OPINION
 I.
 
 8
 Although Aeron agrees with the Maritime Administration's determination regarding the subsidy provisions in its contract with AMT, the Administration opposes Aeron's intervention, and contends that the denial of Aeron's motion for intervention is not even appealable. Specifically, the Maritime Administration argues that, while an order denying a motion to intervene is generally appealable, because Aeron did not have a valid claim for intervention, the denial of its motion is not appealable, and, therefore, the appeal should be dismissed. Administration Brief at 9. The Administration cites United States v. American Telephone and Telegraph Co., 642 F.2d 1285, 1290-91 (D.C.Cir.1980), which considered intervention as of right by MCI Communications Corporation under Federal Rule of Civil Procedure 24(a), which is virtually identical to Claims Court Rule 24(a).[4]
 
 
 9
 The Administration's suggestion of dismissal for nonappealability is not well taken. As the AT & T court explained, the appealability question centers on the validity of the claim for intervention and thus necessarily requires a review of the merits of the intervention claim. AT & T, 642 F.2d at 1290. Thus, both the issues of dismissal and of validity of the intervention claim "are resolved by the same inquiry." Id. The Administration's statement of its position implicitly acknowledges as much--denial is not appealable because the claim for intervention is not valid. Accordingly, simple logic requires that we look past the Administration's argument regarding dismissal, as such, and address the merits of Aeron's claim.
 
 II.
 A.
 
 10
 We need not resolve an issue debated by Aeron and the parties as to whether we are to review the Claims Court's decision under an abuse of discretion or de novo standard. See Aeron Brief at p. 8; Administration Brief at p. 16; AMT Brief at p. 23; and Aeron Reply Brief at p. 13. Even under a de novo standard of review, Aeron must establish that it has "an interest relating to the property or transaction which is the subject of the action" between AMT and the Maritime Administration in order to convince us that the Claims Court erred in denying intervention. Cl.Ct.R. 24(a). Aeron has emphatically expressed concern as to the possibilities that the Maritime Administration's decision might be declared to be incorrect, and that AMT would then benefit from an operating-differential subsidy in any subsequent competition between AMT and Aeron for carriage of grain cargoes to Israel. Although the requirements for intervention are to be construed in favor of intervention, see Westlands Water District v. United States, 700 F.2d 561, 563 (9th Cir.1983), we agree with the Claims Court that Aeron's fear of future subsidized competition, which may never arise, does not reflect an interest in the property or transaction at issue in this action.
 
 
 11
 Intervention is proper only to protect those interests which are " 'of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.' " AT & T, 642 F.2d at 1292 (emphasis added) (quoting Smith v. Gale, 144 U.S. 509, 518, 12 S.Ct. 674, 676, 36 L.Ed. 521 (1892)). The interest thus may not be either indirect or contingent. See, e.g., New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 463 (5th Cir.1984), cert. denied, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984); Dilks v. Aloha Airlines, Inc., 642 F.2d 1155, 1157 (9th Cir.1981) (per curiam). The interest must also be a "legally protectible interest." Westlands Water District, 700 F.2d at 563.
 
 
 12
 Aeron's interest is both indirect and contingent. Even in the event of a Claims Court decision making AMT eligible for the subsidy, Aeron could be exposed to "subsidized competition" only if each and every one of a chain of other possible, but not certain, events were to take place. First, the Israeli Government would have to continue to make grain cargoes available for carriage by U.S.-flag vessels. AMT and Aeron would then have to be among those shipping companies having U.S.-flag vessels available to carry the Israeli grain cargoes. Next, both AMT and Aeron would have to seek the Israeli cargoes. And finally, AMT and Aeron would actually have to compete for the carriage of the same grain shipments. Short of the actual occurrence of each event in this chain, a Claims Court decision in favor of AMT could not have the competitive effect envisioned by Aeron. Compare Rosebud Coal Sales Co. v. Andrus, 644 F.2d 849, 851 (10th Cir.1981) (although would-be intervenor did not have "legally protectable" interest, its interest was direct since the royalty rate for coal to be paid by would-be intervenor necessarily would be determined by outcome of the case between the plaintiff, another coal company, and the Department of Interior); AT & T, 642 F.2d at 1292 (MCI's legal interest in protecting its work product would have been directly lost through operation of a discovery order in the case between AT & T and the government). Thus, Aeron's interest is indirect, because no consequence to it flows immediately from a Claims Court ruling, and contingent because of the uncertainty that other events will actually follow, causing Aeron to suffer any harm.
 
 
 13
 Furthermore, Aeron cannot meet the requirement of a "legally protectable interest" which has been held to require something more than merely an economic interest. New Orleans Public Service, 732 F.2d at 464. What has been required is that "the interest be one which the substantive law recognizes as belonging to or being owned by the applicant." Id. (emphasis in original). Nor does a general interest in promoting what a would-be intervenor regards as "enlightened public policy" qualify as a legally protectable interest belonging to the applicant. Westlands Water District, 700 F.2d at 563. The interest of an applicant non-party having no privity claim in a contract, the terms of which are disputed by the parties to it, also has not been recognized as legally protectable, even when the outcome of the contract action is almost certain to have a significant and immediate economic impact on the applicant. Rosebud, 644 F.2d at 851.
 
 
 14
 Rosebud involved a dispute between Rosebud, a coal company, and the Department of Interior based on the statutory right of the Department, in its coal land lease agreement with Rosebud, to raise the royalty rate charged for coal taken from the property. The applicant for intervention was another coal company which was required to pay coal royalties according to the rate at which Rosebud was charged. Id. In addition to upholding the denial of the applicant's motion for intervention because no privity existed, the Rosebud court observed that to hold that the applicant was entitled to intervene as a matter of right in such a case would lead to an absurd result whereby anyone affected by a determination regarding standard contract language at issue in a case involving the government would be entitled to intervene, Rosebud, 644 F.2d at 851, thus diminishing government control over its own litigation. Rosebud, 644 F.2d at 851 n. 4. Likewise, allowing intervention by Aeron in this case would open the intervention door to all other potential competitors of AMT despite their lack of privity, and would jeopardize the Administration's control of its litigation.
 
 
 15
 Aeron argues that its case is distinguishable from Rosebud in that "the putative intervenor in Rosebud had no interest in the lease at issue, except for the fact it had incorporated some of its terms into its own contract with plaintiff." Appellants' Reply Brief at 10 n. 7. Aeron explains that it is not a party to contracts identical to that contract to be interpreted by the Claims Court, but that it faces the very real specter of "subsidized competition" if plaintiff prevails. Id. In our view, this factual distinction, rather than strengthening Aeron's position, weakens it. The economic interest of the Rosebud applicant, although not arising from the contract in suit, would certainly be affected by the outcome of that action precisely because of the identity in royalty provisions. On the other hand, Aeron's economic interest not only doesn't derive from the contract between AMT and the Maritime Administration, but because Aeron has no existing operating-differential subsidy contract with the government, it will suffer no impact solely based on the Claims Court's ruling in the underlying case.
 
 
 16
 As just one shipper in the marketplace, Aeron assumes the risk that a potential competitor will strike some favorable contract with a third party, including the government, and thus be in a favorable competitive position with Aeron should head to head competition come about. Thus, the mere possibility of such competition cannot entitle Aeron, or any other shipper, to a partnership with the Maritime Administration every time the Administration litigates over one of its contracts with a potential competitor.
 
 B.
 
 17
 Furthermore, in our view, no provision of the Merchant Marine Act transforms Aeron's indirect, contingent interest, based merely "upon the possibility of increased competition," into a legally protectable interest granting intervention as of right under Rule 24(a). Aeron contends that because "section 605(c) of the Merchant Marine Act gives competitors standing to oppose subsidy awards to certain types of cargo and to challenge them in court," this "statute establishes their interest in actions such as this in which alleged subsidy awards are sought to be enforced." Appellant's Reply Brief at 6. Section 605(c) does not accord such rights. Section 605(c) provides in pertinent part:
 
 
 18
 No contract shall be made under this subchapter ... unless the Secretary of Commerce shall determine after proper hearing of all parties that the service already provided by vessels of United States registry is inadequate, and that in the accomplishment of the purposes and policy of this chapter additional vessels should be operated....
 
 
 19
 Accordingly, under the statute, "all parties" have a right to be heard by the "Secretary of Commerce" or his representative prior to the time that a subsidy contract is made. The statute grants no right to any would-be intervenor to be heard by the Claims Court after the Maritime Administration enters into the contract with a shipping company and the shipper sues to enforce the contract and/or for damages for its breach. As a general matter, standing to intervene in a federal court differs fundamentally from that in an administrative agency. An agency's responsibility for implementing statutory purposes typically justifies wider discretion in hearing from "parties" beyond those directly involved than is allowed to the courts by either the Constitution or the common law. New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 690 F.2d 1203, 1214 (5th Cir.1982), vacated, in part, on other grounds, 694 F.2d 421 (5th Cir.1982), reh. granted, 719 F.2d 733 (5th Cir.1983), reinstated, 732 F.2d 452 (5th Cir.1984), cert. denied, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). Moreover, the Claims Court by statute has a narrowly limited jurisdiction. Thus, a right to sue or intervene in district court does not, by itself, establish a right to sue or intervene in the Claims Court. Similarly, unless it expressly so provides, no statute pertaining to the Maritime Administration creates rights to sue or intervene in the Claims Court.
 
 
 20
 In this case, Aeron did not participate in the original section 605(c) proceeding bearing on AMT's subsidy contract. Administration's Brief at 20; Appellants' Reply Brief at 7. But belatedly, in an action over a contract to which Aeron is a total stranger, Aeron seeks the result which might have been achieved by earlier participation in the forum where Aeron's participation would have been enforceable by law. It cannot rewrite history in this way.
 
 
 21
 We do not suggest, however, that because Aeron was unable or chose not to participate in the section 605(c) proceeding it has no statutory standing to challenge the Secretary's original determination regarding the subsidy by bringing an action on its own behalf in district court. Aeron's standing to challenge the Secretary's determination in such an action is not an issue before us.
 
 CONCLUSION
 
 22
 Since we conclude that Aeron has not claimed an interest recognized under Rule 24(a), we need not and do not decide whether the other requirements of Rule 24(a), namely, whether the disposition of the Claims Court action will impair or impede Aeron's ability to protect its interest and whether the Maritime Administration adequately represents Aeron's interest, are met in this case. On the bases set forth above, the denial of Aeron's motion to intervene is
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 See generally, Merchant Marine Act of 1936, 49 Stat. 1985, Secs. 601-13, 46 U.S.C.App. Secs. 1171-83, and 46 U.S.C. Sec. 1183a
 
 
 [2]
 We need not and do not offer any view with respect to what is or is not "commercial" cargo
 
 
 [3]
 Aeron also sought discretionary intervention, but its denial has not been appealed
 
 
 [4]
 In our analysis of the intervention issues reached in this opinion, we also rely upon other cases interpreting Federal Rule 24(a)