Amanda BECK, a minor, by her father, Henry J. BECK, Petitioner–Appellant,

v.

SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent–Appellee.

No. 90–5082.

United States Court of Appeals, Federal Circuit.

Jan. 29, 1991.

Norman J. Lerum, Carponelli, Krug & Lerum, Chicago, Ill., argued, for petitioner-appellant. With him on the brief was Stephen P. Carponelli, Carponelli & Krug, Chicago, Ill.

Thomas M. Bondy, Dept. of Justice, Washington, D.C., argued, for respondent-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and Barbara C. Biddle.

Before MARKEY, MICHEL, and LOURIE, Circuit Judges.

MICHEL, Circuit Judge.

Amanda Beck appeals from the March 8, 1990 Order of the United States Claims Court denying her counsel's request for an award of costs he advanced in earlier district court litigation in this suit under the National Childhood Vaccine Injury Act, 42 U.S.C.A. §§ 300aa–1 through 300aa–34 (West Supp.1990), denying approval of the agreement to pay part of his fees and costs from the compensation awarded to her, denying an attorney fees award under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) (1988), and denying attorney fees as sanctions under Rule 11 of the Rules of the United States Claims Court (RUSCC). *Beck v. Secretary of the Dep't of Health and Human Servs.*, No. 88–51V (Cl.Ct. March 8, 1990). Because the Claims Court correctly interpreted and applied the attorney fees provisions of the Vaccine Act and the EAJA, did not err in refusing to approve the fee agreement, and did not abuse its discretion in denying sanctions under RUSCC 11, we affirm the order appealed from.

## BACKGROUND

Amanda Beck was born December 18, 1978, in Honolulu, Hawaii, where her parents, Gail and Henry Beck, were serving on active duty in the U.S. Navy. Amanda was a healthy baby at birth and showed normal growth and development during her first six weeks. On January 26, 1979, Amanda's parents took her to the Tripler Army Medical Center for a routine checkup, in the course of which she was given a diphtheria-pertussis-tetanus (DPT) inoculation. Following this injection, Amanda began to show signs of illness—fever, lethargy, and seizures. She was given a second DPT shot on April 20, 1979, after which the seizures became more frequent. After a series of visits to various military medical facilities, she was diagnosed as probably suffering from pertussis encephalopathy, characterized by permanent severe brain damage. Amanda's mental development virtually ceased, such that by March 1981, when she was over two years old, she was described as having a developmental level less than that of a one year old child.

Amanda Beck today remains profoundly retarded. She requires constant care and attention, ongoing medical monitoring, physical and speech therapy, and will probably be required to wear diapers for the rest of her life.

In 1985, Henry Beck, on behalf of himself and Amanda, filed a lawsuit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1982), alleging malpractice by the military medical personnel who administered the DPT

vaccine. *Beck v. United States*, No. 86 C 10134, 1987 WL 17154 (N.D.Ill. Sept. 11, 1987) (reinstating case). The Becks had the civil action dismissed on November 14, 1988 in order to file a petition in the United States Claims Court for compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program"), which was established pursuant to the National Childhood Vaccine Injury Act of 1986 (the "Vaccine Act"), Pub.L. No. 99–660, title III, 100 Stat. 3755 (codified as amended at 42 U.S.C.A. §§ 300aa–1 through 300aa–34 (West Supp.1990)). The Vaccine Program, which took effect October 1, 1988, provides a no-fault compensation scheme for certain persons who die or are injured in connection with the administration of a vaccine. After an initial decision by a special master on Beck's petition, as required in Vaccine Act proceedings, 42 U.S.C.A. § 300aa–12(d), the Claims Court reviewed and largely adopted the special master's report, and awarded Beck $1,276,-017 in compensation and $30,000 for attorney fees and costs. *Beck v. Secretary of the Dep't of Health and Human Servs.*, No. 88–51V (Cl.Ct. Dec. 7, 1989).

Beck moved for an additional award of attorney fees and costs under the Vaccine Act, or alternatively, under the EAJA, and for approval of the agreement to pay attorney fees and costs exceeding the $30,000 fee award out of the $1.2 million compensation award. The special master issued a Supplemental Report on January 16, 1990, ruling that while no additional fees were recoverable under the EAJA, the Vaccine Act's $30,000 cap applies only to attorney *fees*, per se, so that additional expenses, characterized as "advanced costs," could and would be awarded. Noting that the Claims Court would lack jurisdiction to enforce a ruling on the propriety of a fee agreement between the Becks and their lawyer, the special master declined to approve or disapprove the agreement, on the ground that such a ruling would merely be an advisory opinion.

The Claims Court adopted the special master's report in part, declining to award additional attorney fees under the EAJA, and rejected the report in part, holding that advanced costs are included in the $30,000 cap so that no additional award could be made under the Vaccine Act, and explicitly denying the request for approval of the fee agreement between the Beck family and their counsel. *Beck v. Secretary of the Dep't of Health and Human Servs.*, No. 88–51V, slip op. at 8 (Cl.Ct. March 8, 1990). The court also denied Beck's motion, made after the issuance of the special master's report, requesting sanctions under RUSCC 11. *Id.*

We have exclusive jurisdiction to hear Beck's appeal pursuant to 28 U.S.C. § 1295(a)(3) (1988).

## DISCUSSION

This appeal presents five distinct issues, which will be addressed in the following order: 1) whether the Vaccine Act's prohibition on counsel's seeking payment in excess of the $30,000 cap on attorney fees includes "advanced costs" as well as fees; 2) whether the Act prohibits counsel's seeking payment, from the compensation award, of attorney fees and costs associated with the prior civil action; 3) whether the Claims Court has jurisdiction to disapprove a private fee agreement between a petitioner and the attorney providing for the payment of additional attorney fees and costs beyond the statutory cap from the victim's compensation award; 4) whether the EAJA can be used to award such additional attorney fees in such cases; and 5) whether the Claims Court abused its discretion in denying Rule 11 sanctions in this case.

### I

■ In addition to awarding compensation, the Vaccine Act provides for awards of attorney fees in "retrospective" cases (where the vaccine was administered prior to the October 1, 1988 effective date of the Vaccine Program), up to a limit of $30,000:

**(b) Vaccines administered before effective date**

Compensation awarded under the Program ... may also include an amount,

not to exceed a combined total of $30,-000, for—

    (1) lost earnings ...,

    (2) pain and suffering ..., and

    (3) reasonable attorneys' fees and costs (as provided in subsection (e) of this section).

42 U.S.C.A. § 300aa–15(b) (West Supp. 1990). Subsection (e) in turn details what is included in the "reasonable attorneys' fees and costs" and limits attempts to collect additional amounts:

**(e) Attorneys' fees**

    (1) In awarding compensation on a petition filed under [42 U.S.C.A. § 300aa–11] the special master or court shall also award as part of such compensation an amount to cover—

        (A) reasonable attorneys' fees, and

        (B) other costs

incurred in any proceeding on such petition....

    (2) If the petitioner, before the effective date of this subpart, filed a civil action for damages for any vaccine-related injury or death for which compensation may be awarded under the Program, and petitioned ... to have such action dismissed and to file a petition for compensation under the Program, in awarding compensation on such petition the special master or court may include an amount limited to the costs and expenses incurred by the petitioner and the attorney of the petitioner before the effective date of this subpart in preparing, filing, and prosecuting such civil action (including the reasonable value of the attorney's time if the civil action was filed under contingency fee arrangements).

    (3) No attorney may charge any fee for services in connection with a petition filed under [42 U.S.C.A. § 300aa–11] which is in addition to any amount awarded as compensation by the special master or court under paragraph (1).

42 U.S.C.A. § 300aa–15(e) (West Supp. 1990). The Vaccine Act thus puts a combined limit of $30,000 on the amount awarded for lost earnings, pain and suffering, and "reasonable attorneys' fees and costs." Therefore, in a case such as this

one, where no award for lost earnings or pain and suffering was made, the attorney fees award is limited to $30,000. Moreover, the Act expressly forbids an attorney from charging his or her client any "fee for services" in connection with the Vaccine Act proceedings in addition to that awarded under the Act. But Beck's counsel draws a distinction between "fees" and "costs," and argues that the prohibition in section 15(e)(3) on collecting "fees for services" does not prevent him from charging and collecting additional money for "advanced costs" in connection with the Vaccine Act proceedings.

The interpretation of section 15(e) urged by Beck's counsel is at least superficially plausible. At first glance, "attorneys' fees" could reasonably be understood to mean hourly charges for a lawyer's services, while "costs" might refer to the out-of-pocket expenses incident to litigation—filing fees, expert witness reimbursement, travel, etc. But a careful reading of the complete text of subsections (b) and (e) together leaves no doubt that the term "fee for services" in section 15(e)(3) refers to all the charges on a lawyer's bill, regardless of how they are characterized.

In the first place, there is an apparent inconsistency between subsections (b) and (e). Subsection (b) refers to "reasonable attorneys' fees *and costs (as provided in subsection (e)* of this section)," though subsection (e) is headed only "Attorneys' fees," *not* "fees and costs." 42 U.S.C.A. § 300aa–15(b), (e) (emphasis added). Though headed only "Attorneys' fees," however, subsection (e)(1) actually refers to "(A) reasonable attorneys' fees, *and* (B) *other costs.*" *Id.* at § 300aa–15(e) (emphasis added). "Fees" in subsection (e)(1) must therefore include "costs." Yet in subsection (e)(2), the term "costs" seems to include the hourly charges which Beck's counsel urges are merely "attorney's fees": "*costs and expenses* incurred by the petitioner and the attorney ... (*including the reasonable value of the attorneys' time....*)." *Id.* at § 300aa–15(e)(2) (emphasis added).

In the face of such varying language, the only reasonable and consistent interpretation of the terms "attorneys' fees," "costs," and "expenses" that is possible is that they are used interchangeably to refer to all expenses of litigation. In any event, the inconsistency of language precludes the sort of categorical distinctions in terminology urged by Beck's counsel, namely, that "attorneys' fees" refers only to the charges for a lawyer's time while "costs" covers only other expenses.

The language of the Vaccine Act thus leads us to conclude that the § 300aa–15(e)(3) cap on collecting any additional "fee for services" includes advanced costs as well as hourly charges for lawyer time. This interpretation is further reinforced by the legislative history of the Vaccine Act, which shows that one of Congress' purposes was to address the mounting costs of litigation and provide an economical alternative to traditional tort suits by creating a no-fault compensation system to award single, lump-sum payments. *See* H.R.Rep. No. 908, 99th Cong., 2d Sess. 6, *reprinted in* 1986 U.S.Code Cong. & Admin.News 6344, 6347. Congress intended that recovery under the Act would be fair and generous, and that victims of vaccine injuries would thus choose to seek compensation under the new Vaccine Program rather than risk the costs, delays and uncertainties of tort litigation. *Id.* at 26, 1986 U.S.Code Cong. & Admin.News at 6367 ("Vaccine-injured persons will now have an appealing alternative to the tort system."); H.R.Rep. No. 391(I), 100th Cong., 1st Sess. 691, *reprinted in* 1987 U.S.Code Cong. & Admin.News 2313-1, 2313–365 ("It is the Committee's intention to create a compensation system that is speedy and generous enough to dissuade petitioners from going on to court."). In providing for an award of attorney fees, Congress clearly believed that the litigation expenses associated with a petition would be relatively small, considerably less than the $30,000 cap. H.R.Rep. No. 908, *supra*, at 22, 1986 U.S.Code Cong. & Admin.News at 6363 ("Because of the straightforward nature of the petition and the proceedings, the Committee does not anticipate that reasonable attorneys' fees

will be large. (For example, attorneys' fees in a similar compensation program for black lung disease ... have, in almost all cases, been less than $15,000 in total.)"). Moreover, in rejecting a higher cost estimate from the Congressional Budget Office, the House committee report on the bill which became the Vaccine Act uses the terms "attorneys' fees" and "costs" interchangeably to refer to litigation expenses:

> CBO also estimates that the *legal costs and attorneys' fees* will be $50,000 per case.... The Committee has assumed that *costs* under a no-fault, non-adversarial system will be significantly lower.... [T]he *costs of legal services* will more closely approximate those incurred in such systems as the Black Lung benefits program or workers' compensation programs.... The Committee has, therefore, assumed that *legal costs* may be as much as $15,000 per case in the compensation Program.

*Id.* at 36–37, 1986 U.S.Code Cong. & Admin.News at 6377–78 (emphasis added).

In light of this legislative history, the conclusion is inescapable that Congress envisaged that the Program would compensate victims adequately, and that the separate attorney fees award would cover *all* legal expenses. To allow an attorney to collect additional fees, characterized as "advanced costs," would violate the intent of Congress in creating a no-fault compensation scheme in which attorneys would receive what Congress considered to be adequate payment and vaccine injury victims would be awarded compensation protected from any attempt by an attorney to collect additional fees.

Beck's counsel argues that the Vaccine Act's limitations on attorney fees are too low, resulting in inadequate compensation for attorneys like himself who have expended a great deal of time in district court litigation prior to the Vaccine Act proceedings, and thus potentially discouraging competent representation of such claimants in the future. He further argues that the cap in section 15(b) creates serious conflicts of interest between lawyer and client as to allocation of award money between pain

and suffering and lost earnings, on the one hand, and attorney fees on the other, as well as to choice of forum (the attorney often would be better compensated after a victory in a district court tort case, while the client may have a surer chance of recovery under the Vaccine Act).

Regardless of their merits, these policy arguments may be implemented only by Congress. Our duty is limited to interpreting the statute as it was enacted, not as it arguably should have been enacted.

We therefore affirm the Claims Court and hold that the $30,000 cap on attorney fees in 42 U.S.C.A. § 300aa–15(b) limits *all* awards of compensation to attorneys for litigation under the Vaccine Act, whether characterized as "fees" or as "costs," and that § 300aa–15(e)(3) prohibits an attorney from charging or attempting to collect from his client any fees and costs in excess of this statutory cap.

## II

■ Beck's counsel also argues that even if he is limited to the maximum award of $30,000 for Vaccine Act litigation, the Act does not prohibit him from separately charging his clients for fees and costs in connection with the district court civil suit which preceded the Vaccine Act petition. To this end, Beck's counsel asked the Claims Court to approve a fee agreement between himself and the Becks under which he is to receive payment, out of Amanda Beck's compensation award, for approximately $34,000 of legal fees and expenses for the prior civil action, over and above the $30,000 he was awarded under the Act. The Claims Court denied this request.

The Vaccine Act prevents an attorney from charging a fee "in addition to any amount awarded as compensation by the special master or court under paragraph (1)." 42 U.S.C.A. § 300aa–15(e)(3) (West Supp.1990). Paragraph (1) of subsection 15(e) awards fees only for expenses incurred in Vaccine Act proceedings. The clear language of 15(e)(3) thus seems to apply only to fees for Vaccine Act proceedings, not to fees associated with the prior

civil litigation, which are covered under paragraph (2). Indeed, the government concedes that "section 15(e)(3)'s blanket prohibition on extra charging does not necessarily apply to a charge for services rendered in the course of pursuing a prior court action," and that "the Vaccine Act does not in our view automatically abrogate such [fee] agreements on a wholesale basis." Appellee's Brief at 22–23.

The issue, then, is not whether Beck's lawyer may collect from his client fees for the district court suit, but rather whether such fees may be paid from the $1.2 million in compensation which the Claims Court awarded to Amanda Beck. Beck's counsel argues in effect that his bill of $34,000 is relatively small compared to the size of the award, so that enough money was awarded for him to be paid without hurting Amanda.

The Claims Court, on the other hand, reasoned that since the compensation awarded Amanda was carefully calculated based on her medical condition and future needs, any payment of attorney fees out of her compensation award would reduce the amount Amanda would receive and "would contravene the court's duty to petitioner to award her the fair and full compensation she has proven is due." *Beck v. Secretary of the Dep't of Health and Human Servs.*, No. 88–51V, slip op. at 7 (Cl.Ct. March 8, 1990). The government's argument echoes this position: Amanda Beck's compensation award was based on sophisticated economic analysis and evidence of her reasonably necessary expenses and of her probable life span. The award was intended to provide for her medical and rehabilitative expenses for the rest of her life, and every penny of the award has been determined to be necessary for some future expense. If Beck's counsel were correct, and if there were indeed some slack in the award, this would mean only that the award was too large: Any excess should be returned to the government, not given to Amanda's lawyer.

We agree with the Claims Court's reasoning. In creating the Vaccine Program, one of Congress' purposes was to ade-

quately compensate the victims of vaccine-related injuries. H.R.Rep. No. 908, 99th Cong., 2d Sess. 6–7, *reprinted in* 1986 U.S. Code Cong. & Admin.News 6344, 6346–48 (noting that existing tort remedies were often inadequate to compensate victims and stressing need for better system). To this end, it specially appropriated money to be used for paying compensation under the Vaccine Program in retrospective cases, 42 U.S.C.A. § 300aa–15(j), and it established the Vaccine Injury Compensation Trust Fund ("Vaccine Fund"), Pub.L. 100–203, § 9202, 101 Stat. 1330 (codified at 26 U.S.C.A. § 9510 (West Supp.1990)), funded in part by an excise tax on vaccines, whose expenditures were to be used exclusively for carrying out the purposes of the Vaccine Program in paying compensation in prospective cases. *See* H.R.Rep. No. 908, 99th Cong., 2d Sess. 33, *reprinted in* 1986 U.S.Code Cong. & Admin.News 6344, 6374.

The Act carefully sets out guidelines by which victim compensation paid out of the specially appropriated Vaccine Fund is to be calculated, specifying in considerable detail what sorts of expenses can be included in the compensation award: "rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities determined to be reasonably necessary." 42 U.S.C.A. § 300aa–15(a)(1)(A). Attorney fees are calculated separately from the compensation award. *Id.* at § 300aa–15(e). In light of such careful allocation of federal monies, we cannot conclude, as Beck's counsel argues, that paying some of Amanda's award to him would not violate Congressional intent.

This conclusion is further borne out by what the Act specifies compensation may *not* be paid for: "Compensation awarded under the Program may not include ... compensation for other than the health, education, or welfare of the person who suffered the vaccine-related injury with respect to which the compensation is paid." *Id.* at § 300aa–15(d). Since paying her attorney out of the compensation awarded under the Act obviously would *not* be for the "health education, or welfare" of Amanda, it would violate the express intent of Congress in appropriating money for the Vaccine Fund.

Beck's counsel further argues that the compensation award has been placed under the supervision of a Wisconsin probate court, which would not release funds to Amanda's attorney unless it determined that such payments were proper. Thus, Amanda's interests will be adequately protected. While we are comforted by this knowledge, it is irrelevant to the question at hand. Our task is not to evaluate to what extent paying more to her counsel would be in Amanda's interest, but rather to determine how Congress intended that the Vaccine Fund it has appropriated should be spent.

Based on the structure of the Vaccine Act and Congress' overall purpose in creating the Vaccine Program, we agree with the Claims Court's determination and hold that money awarded under the Vaccine Act as victim compensation may only be used to pay for the injury-related expenses upon which it was calculated, and may not be used to pay for attorney fees and costs, whether associated with the Vaccine Act proceedings or with litigation of a prior civil suit.

### III

Having decided that 42 U.S.C.A. § 300aa–15(e)(3) (West Supp.1990) prohibits an attorney from collecting from his client any additional fees, even if characterized as "advanced costs," in connection with the Vaccine Act proceedings, and that it forbids any fees and expenses associated with the prior district court litigation from being paid out of the compensation awarded the petitioner, we now turn to the contentions of the parties concerning the extent to which the Claims Court has jurisdiction to rule on the propriety of a fee agreement between the petitioner and her attorney which is contrary to these limitations. Beck's counsel argues that the Claims

Court's "disapproval" of his fee agreement essentially amounts to an injunction forbidding him from contracting with his client, and that the Claims Court is without jurisdiction to issue such relief. The government, on the other hand, argues that the court has power to direct how the compensation award is to be expended, and if necessary, to enjoin a fee agreement inconsistent with the Vaccine Act. While we agree with the government that this aspect of the order on appeal should be affirmed, we conclude that neither party's position on the issue of jurisdiction is entirely accurate.

■ The Claims Court was established under article I of the Constitution, 28 U.S.C. § 171(a) (1988), and its power is limited to that which Congress has expressly given to it, in Chapter 91 of Title 28 as well as in other statutes (including the Vaccine Act), to adjudicate certain types of disputes. *See American Maritime Transport, Inc. v. United States,* 870 F.2d 1559, 1563 (Fed.Cir.1989) ("[T]he Claims Court by statute has a narrowly limited jurisdiction."). The Tucker Act, 28 U.S.C. § 1491 (1988), and other statutes give the Claims Court certain limited equitable powers,[1] but the Claims Court has no *general* equitable power to issue injunctions in cases other than those in which such power has explicitly been granted. *See United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1373 (Fed. Cir.1983).

The Vaccine Act itself gives jurisdiction to the Claims Court to determine whether petitioners under the Vaccine Program are entitled to compensation, and to "issue and enforce such orders as the court deems necessary to assure the prompt payment of any compensation awarded." 42 U.S.C.A.

§ 300aa–12(a). One might argue that this section impliedly gives the Claims Court jurisdiction to issue injunctions necessary to insure that compensation is properly spent, and thus to prevent attorneys from charging fees forbidden by subsection 15(e)(3) of the Act. But the statute empowers the court only to assure "payment" of compensation—preservation of the integrity of an award and supervision of the expenditure of compensation funds are not covered. Moreover, we are reluctant to construe narrow statutory language as constituting such a broad grant of power, especially when it could only be by implication. *Cf. King,* 395 U.S. at 5, 89 S.Ct. at 1503 ("In the absence of an express grant of jurisdiction from Congress, we decline to assume that the Court of Claims has been given the authority to issue declaratory judgments."); *American Maritime Transport,* 870 F.2d at 1563 ("[U]nless it expressly so provides, no statute pertaining to the Maritime Administration creates rights to sue or intervene in the Claims Court.").

It is, however, reasonable to infer that the Act must confer on the Claims Court that power which is necessary to adjudicate the controversy before it. The Claims Court has a statutory mandate to adjudicate petitions and award compensation as Congress intended, and it therefore had jurisdiction to do what was necessary to carry out its mandate in this case: While the case was actually before it, the Claims Court was certainly authorized to specify how much compensation was to be paid to whom. That is all that it actually did. Such a specification was not, as Beck's counsel urges, a mere "advisory opinion," but rather a necessary part of its duty to allocate victim and attorney compensation in the manner Congress intended.

---

**1.** For example, the Tucker Act, 28 U.S.C. § 1491, confers jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id.* at § 1491(a)(1). The Act further provides that "the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records," *id.* at § 1491(a)(2), and on contract claims brought before the awarding of the contract, "the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief," *id.* at § 1491(a)(3).

■ The Claims Court order on appeal here disapproves the fee agreement between the Becks and their counsel, and the agreement was thus effectively voided as against public policy by the Claims Court's March 8, 1990 Order. Since the court had jurisdiction over the attorney and the victim and over the award to each while the case was before it, and since, as we have discussed in parts I and II of this opinion, implementation of the agreement would be contrary to the explicit provisions of the Vaccine Act, we affirm.

But we do not endorse any interpretation of the Claims Court's opinion, such as the government here seems to urge, that would suggest that the Claims Court would have the power to prevent another such agreement in the future. Without here deciding, it may well be that if the Becks for some reason were later to enter into a new fee agreement with their counsel, also contrary to the Vaccine Act, the Claims Court could not enjoin enforcement of that agreement. The task of upholding the integrity of the compensation award in such a situation might fall solely to other hands. For example, the Wisconsin probate court administering the compensation award might disallow any payments to counsel in excess of the amount allowed by the Vaccine Act. Were the state court to refuse to do this, the government might seek an injunction from the federal district court having jurisdiction. Or were Beck's counsel to bring an action in state or federal court to collect additional fees from his clients, that court might refuse to uphold a fee agreement in violation of the terms of the Act.

Other such scenarios might also be imagined, but none is before us or necessary to our decision, and therefore we decide nothing today about any continuing jurisdiction of the Claims Court after it has decided the case. We hold only that the Claims Court had jurisdiction to proscribe the fee agreement before it during litigation of this case, as it did. We therefore affirm the Claims Court decision disapproving the fee agreement between the Becks and their counsel.

## IV

Beck's counsel argues that if we decide—as we do—that he is not entitled to fees and costs beyond the $30,000 Vaccine Act cap, then he is entitled to reimbursement under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) (1988). The EAJA awards fees to the prevailing party in certain civil actions against the government:

> *Except as otherwise specifically provided by statute,* a court shall award to a prevailing party other than the United States fees ... incurred by that party in any civil action (other than cases sounding in tort) ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). The EAJA thus does not impose a cap on the total amount that can be awarded. But the "Except as otherwise specifically provided" language would appear to exclude a lawsuit under the Vaccine Act, which *does* specifically provide for attorney fees.

Beck's counsel nevertheless argues that he should be able to collect fees under the EAJA because, under our decision in *Gavette v. Office of Personnel Management,* 808 F.2d 1456 (Fed.Cir.1986) (in banc), the EAJA may sometimes be used to supplement another statute's attorney fees provision.

In *Gavette* we held that an award of attorney fees under the EAJA was available in an appeal from the Merit Systems Protection Board to the Federal Circuit, even though a fee award might also have been available under the Back Pay Act, 5 U.S.C. § 5596 (1988), which awarded fees whenever it would be "in the interest of justice" to do so. Our reasoning was that the Back Pay Act provided for attorney fees "in a narrower set of circumstances than those covered by the EAJA," and therefore the EAJA did not "impermissibly replace or supersede" the Back Pay Act. 808 F.2d at 1464–65. Where "the EAJA

covers situations which would not be covered by" another fee statute, we reasoned, the relatively easy standard of § 2412(d) could be used to supplement the other statute's fee provision. *Id.* at 1465.

■ *Gavette* thus stands only for the limited proposition that the EAJA may be used to supplement another statute's attorney fee provision where the other statute has a more difficult or narrow standard for awarding fees. But this is not such a situation. Here, the standard for an award under the other statute—the Vaccine Act (which awards fees whenever victim compensation is given, subject to a cap of $30,-000 on this and other collateral compensation)—is *less* stringent than that for an award under the EAJA (which requires proof that the government's position was not substantially justified). Beck's counsel is not trying to use § 2412(d) as an alternative to another statute's more difficult standard for recovery, but rather to circumvent a legislatively imposed limitation on the overall amount of recovery. The holding of *Gavette* is thus inapplicable and its reasoning does not in any way support counsel's request for an award of fees.

■ We hold that 28 U.S.C. § 2412(d) may not be used to supplement an award of fees under the Vaccine Act. Accordingly, the denial of Beck's motion for attorney fees under § 2412(d) must be affirmed.

## V

■ Beck's counsel also argues that he is entitled to attorney fees under Rule 11 of the Rules of the United States Claims Court (RUSCC).[2] RUSCC 11 provides:

The signature of an attorney or party constitutes a certificate by him ... that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a *pleading, motion, or other paper is signed* in violation of this rule, the court ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

RUSCC 11 (emphasis added). By its terms, RUSCC 11 thus applies only to signed pleadings and other papers; it is the signing of the paper which constitutes the violation. *Cf. Pavelic & Leflore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) (Fed.R. Civ.P. 11 imposes sanctions only on attorney who actually signs paper). Beck's counsel has pointed to no paper that was signed in violation of RUSCC 11. Rather, his allegations amount to a general charge of litigation misconduct, for which RUSCC 11 does not provide relief. Thus, assuming that RUSCC 11 applies to the government or in a Vaccine Act case such as this one,[3] Beck's counsel has not shown any violation.

We review decisions on RUSCC 11 motions under an abuse of discretion standard. *See Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 2457–61, 110 L.Ed.2d 359 (1990) (Fed.R.Civ.P. 11). Since Beck has shown no error, much less abuse of discretion, in the Claims Court's decision, the denial of attorney fees must be affirmed.

---

**2.** Although Beck's brief refers to Fed.R.Civ.P. 11, which applies only to district court proceedings, we shall treat Beck's request—as the Claims Court seems to have done—as though properly made under the corresponding Claims Court Rule, RUSCC 11.

**3.** In view of the complete failure to make out even a prima facie violation of RUSCC 11, it is not necessary to address the United States' argument that a request for attorney fees against the government under RUSCC 11 is barred by sovereign immunity, *see* Appellee's Brief at 39–40, or its contention that RUSCC 11 does not apply in Vaccine Act proceedings before a special master, *id.* at 39 n. 34.

## CONCLUSION

We hold that the $30,000 statutory cap on attorney fees in 42 U.S.C.A. § 300aa–15(b) (West Supp.1990) applies to all charges by the attorney against his client, "advanced costs" as well as fees for legal services rendered, including for previous civil litigation of the same claim. Furthermore, § 300aa–15(e) prevents an attorney from charging or collecting additional fees (including "costs") from the compensation awarded to a successful Vaccine Act claimant. While a Vaccine Act case is actually pending before the Claims Court, it has jurisdiction to enforce this prohibition by effectively voiding a fee agreement that conflicts with the Vaccine Act.

We further hold that the EAJA, 28 U.S.C. § 2412(d) (1988), may not be used as the basis for an award of attorney fees in litigation under the Vaccine Act. Nor has the Claims Court abused its discretion in declining to award RUSCC 11 sanctions in this case. Accordingly, the order appealed from is, in all respects,

AFFIRMED.