**Cheryl ASHE–CLINE, as Mother and Next Friend of Melissa Ashe, a minor, Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–1823V.

United States Court of Federal Claims.

Oct. 29, 1993.

**42**

Joseph W. Phebus, Urbana, IL, for petitioner.

Kate Adams, Dept. of Justice, Washington, DC, for respondent.

*Opinion*

WEINSTEIN, Judge.

Respondent's motion for review raises a significant issue: whether the special master may order the payment of attorneys' fees and costs to a petitioner who was found to be ineligible for an award of compensation for vaccine-related injuries under the National Vaccine Injury Compensation Program (Program), Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub.L. No. 99–660, 100 Stat. 3743, 3758 (the Act or the Vaccine Act) (codified as amended at 42 U.S.C. § 300aa–1 to 300aa–34 [1] (1988 & Supp. III 1991)), when the petitioner has not made an "election ... to receive the compensation," or "to accept the judgment" under § 21(a) of the Act, an election which is a prerequisite, under § 15(f)(1) of the Act, to the "[p]ayment of compensation" under the Act.[2]

---

1. Section references throughout are citations to the Act, as amended and codified, but omit "42 U.S.C. § 300aa–."

2. This issue was decided adversely to the government in *Saunders v. Secretary of the Dep't of Health & Human Servs.*, 26 Cl.Ct. 1221, 1225–26 (1992), *appeal docketed,* No. 93–5037 (Fed.Cir. argued July 8, 1993); *Mitchell v. Secretary of the Dep't of Health & Human Servs.*, 29 Fed.Cl. 150, 153 (1993) (*Mitchell II*); and *Wells v. Secretary of the Dep't of Health & Human Servs.*, 28 Fed.Cl. 647, 663 (1993). In *Munn v. Secretary of the Dep't of Health & Human Servs.*, 28 Fed.Cl. 490, 494, *appeal docketed,* No. 93–5153 (Fed.Cir. June 24, 1993), the court agreed with respondent's argument that it was error under § 15(f)(1) to award such fees absent an election under § 21(a)(1) but concluded that the error was not reversible because it was "not unmistakably clear." The *Saunders* decision also has been followed by an unpublished order of this court, *Klein v. Secretary of the Dep't of Health & Human*

*Servs.*, No. 91–1548V, slip op. at 2 (Fed.Cl. Mar. 3, 1993), *appeal docketed,* No. 93–5128 (Fed.Cir. filed May 3, 1993), and several special masters' decisions, *see Roberson v. Secretary of the Dep't of Health & Human Servs.*, No. 91–1677V, 1993 WL 120639, at *1 (Fed.Cl.Spec.Mstr. Apr. 2, 1993); *Evans v. Secretary of the Dep't of Health & Human Servs.*, No. 90–1379V, slip op. at 3, 1992 WL 296420 (Fed.Cl.Spec.Mstr., Oct. 1, 1992); *accord Waddell v. Secretary of the Dep't of Health & Human Servs.*, No. 90–197V, 1991 WL 33250, at *1 (Fed.Cl.Spec.Mstr. Feb. 25, 1991). *But cf. Mains v. Secretary of the Dep't of Health & Human Servs.*, No. 90–992V, 1993 WL 69724, at *2–*3 (Fed.Cl.Spec.Mstr. Feb. 26, 1993); *Wodicker v. Secretary of the Dep't of Health & Human Servs.*, No. 92–64V, 1993 WL 64280, at *2–*3 (Fed.Cl.Spec.Mstr. Feb. 23, 1993) (following *Saunders,* but acknowledging (1) "the force of plain language behind [the argument that attorneys' fees are compensation barred by section 15(f)(1) ]," (2) that "[t]here is no mechanism in the Act for a separate award of fees and costs";

Specifically, the questions decided are: (1) whether attorneys' fees and costs are "compensation" under § 15(f)(1) and § 21(a) of the Act; and, if so, (2) whether an election to file a civil action bars the payment of such compensation.

The court concludes, based on the plain language of the statute, that the term "compensation" means all forms of compensation to a petitioner authorized by the Act, *i.e.*, all forms of compensation listed in § 15 ("Compensation"), including attorneys' fees, which are authorized in § 15(e) ("Attorneys' fees"). If "compensation" includes "attorneys' fees," the § 15(f)(1) prohibition on the payment of "compensation" until a petitioner has elected "to receive compensation" under § 21(a) also bars the payment of attorneys' fees until such an election is made. Because petitioner indisputably has *not* elected to receive "compensation" under § 21(a), but, instead, has elected the alternative of filing a civil action, the court holds that petitioner's attorneys' fees may not be paid from funds authorized under the Program.

Therefore, the special master's conclusion, adopted from the "result and reasoning" in *Saunders*, 26 Cl.Ct. at 1225, that § 15(f)(1) does not require an election to receive "compensation" on the merits under § 21(a) as a condition for payment of compensation in the form of attorneys' fees when the judgment "on the merits" does not award compensation "on the merits," is set aside as not in accordance with the law, pursuant to § 12(e)(2)(B).

### Facts

On July 29, 1992, the special master rendered a decision denying petitioner's claim for relief under the Program. No compensation was awarded at that time. No motion

for review was filed within thirty days. Accordingly, on August 31, 1992, the Clerk of the Court, pursuant to § 12(e)(3), entered judgment dismissing the case. On or about October 21, 1992, petitioner filed an election to reject the "judgment" of the United States Claims Court[3] and to file a civil action for damages in state or federal court. Thereafter, on November 3, 1992, petitioner requested payment of her attorneys' fees and costs. The special master subsequently issued a decision allowing payment of such fees and costs. The government filed a motion for review by this court. *See* § 12(e)(1).

### The Statute

Section 15(f)(1) of the Act states

Except as provided in paragraph (2),[4] no compensation may be *paid* until an election has been made, or has been deemed to have been made, under section 300aa–21(a) of this title *to receive compensation.*

42 U.S.C. § 300aa–15(f)(1) (emphasis added).

Section 21(a) of the Act provides

After the judgment has been entered by the United States Claims Court[5] ... the petitioner who filed the petition ... *shall* file with the [c]ourt ...

(1) *if the judgment awarded compensation,* an election in writing *to receive the compensation* or to file a civil action for damages for such injury or death, or

(2) *if the judgment did not award compensation,* an election in writing *to accept the judgment* or to file a civil action for damages for such injury or death.

An election shall be filed under this subsection not later than 90 days after the date of the court's *final judgment* with

---

and (3) that the 1989 amendments to the Vaccine rules contained "no provision for accepting selected portions [of a judgment] and rejecting the rest").

**3.** The Claims Court was renamed the Court of Federal Claims by the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516 (1992), which was enacted into law on October 29, 1992.

**4.** Section 15(f)(2), which allows "compensation," up to the date of election, for necessary diagnos-

tic, medical and remedial care incurred "from the date of the judgment" awarding compensation, is not applicable to this case, but is germane, because it illustrates that Congress knew how to provide for an exception to § 15(f)(1)'s blanket prohibition on the receipt of compensation in the absence of an election to receive compensation, when it wished to do so, and because it suggests that any exception to § 15(f)(1) must be express. *See* discussion *infra* pp. 51–53.

**5.** *See supra* note 3.

respect to which the election is to be made. If a person required to file an election with the court under this subsection does not file the election within the time prescribed for filing the election, such person shall be deemed to have filed an election *to accept the judgment* of the court. If a person elects to receive compensation under a judgment of the court in an action for a vaccine-related injury or death ... or is deemed to have accepted the judgment of the court in such action, such person may not bring or maintain a civil action for damages....

42 U.S.C. § 300aa–21(a) (emphasis added). Section 15(e)(1) states

> *In awarding compensation* on a petition ... the special master or court *shall also award as part of such compensation* an amount to *cover*—
>> (A) reasonable *attorneys' fees,* and
>> (B) other costs,
> incurred in any proceeding on such petition. If the *judgment* of the United States Claims Court ... *does not award compensation,* the special master or court may award an amount of *compensation* to *cover* petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

42 U.S.C. § 300aa–15(e)(1) (emphasis added).

Section 12(d)(3)(A) mandates that "[a] special master to whom a petition [under § 11] has been assigned *shall* issue *a decision* on *such petition* with respect to *whether compensation is to be provided* under the Program *and the amount* of such compensation." § 12(d)(3)(A) (emphasis added). ·

### Standard of Review

Section 12(e)(1) authorizes the parties to seek review by this court of the special master's "decision" issued pursuant to § 12(d)(3)(A). Section 12(e)(2)(B) authorizes this court to set aside any conclusion of law by a special master that is found to be "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law," and to issue its own conclusions of law. Section 12(e)(2)(C) authorizes this court to "remand the petition to the special master for further action in accordance with the court's direction."

■ The issue before this court is whether the special master's interpretation of the Act is legally correct. In reviewing a special master's conclusions of law pursuant to § 12(e)(2)(B), a *de novo* standard of review is utilized. *See Munn v. Secretary of the Dep't of Health & Human Servs.,* 970 F.2d 863, 870 (Fed.Cir.1992). The following principles of statutory construction are relevant to this review.

### Waivers of sovereign immunity.

In enacting the Vaccine Act, the United States government waived its sovereign immunity and consented to suit for money damages by certain victims of childhood vaccines. It is axiomatic that waivers of sovereign immunity must be express, and that the statutory conditions on such waivers, such as provisions of the Vaccine Act at issue here, if ambiguous, must be construed strictly in favor of the government. *Ardestani v. INS,* —— U.S. ——, ——, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (citing *Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986)); *United States v. Sherwood,* 312 U.S. 584, 588–90, 61 S.Ct. 767, 770–71, 85 L.Ed. 1058 (1941); *Widdoss v. Secretary of the Dep't of Health & Human Servs.,* 989 F.2d 1170, 1178 n. 6 (Fed.Cir.1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 381, 126 L.Ed.2d 331 (1993).

Similarly, it is well established that statutes permitting the award of attorneys' fees and costs against the government are waivers of sovereign immunity that must be construed strictly in the government's favor. *Ardestani,* —— U.S. at ——, 112 S.Ct. at 520; *accord Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1385 (Fed.Cir.1983).

■ Statutory limitations on executive branch authority to pay out appropriated

funds,[6] such as § 15(f)(1), as conditions on the sovereign's statutory waiver of immunity, must be construed particularly strictly in the government's favor. *Library of Congress v. Shaw*, 478 U.S. at 318–19, 106 S.Ct. at 2963–64. A court may not read in exceptions to the literal terms of such statutory authorizations or the limitations thereto. *Id.*

■ This court's own authority under the Vaccine Act, as under other jurisdiction-creating statutes, is equally strictly limited to the powers to which Congress has expressly consented. *See Beck v. Secretary of the Dep't of Health & Human Servs.*, 924 F.2d 1029, 1036 (Fed.Cir.1991).

*Plain meaning, consistent use of same statutory term.*

Other well-established principles of statutory construction are relevant to this case, particularly the strong presumption that the statute's plain language is the best indication of its meaning. *See Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *Brown v. Secretary of the Dep't of Health & Human Servs.*, 920 F.2d 918, 920 (Fed.Cir.1990) ("our interpretation of the amended version of [§] 15(b) begins and ends with the guiding principle that absent ambiguous language or clearly contrary legislative intent, a statute is construed in accordance with its plain meaning."); *MCI Telecom. Corp. v. United States*, 878 F.2d 362, 365 (Fed.Cir.1989).

■ If there is any question as to the proper meaning of a statutory term, the best guide is the rest of the statute. *See National R.R. Passenger Corp. v. Boston & Maine Corp.*, — U.S. —, —, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992) (in ascertaining whether an agency's interpretation of a statute is a permissible construction, court must look to structure and language of statute as a whole); *King v. St. Vincent's Hospital*, — U.S. —, —, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) (" 'Words are not pebbles in alien juxtaposition; they have only a communal existence; ... all in their aggregate take their purport from the setting in which

they are used.' ") (quoting *NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2d Cir.1949) (L. Hand, J.)); *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962) (a section of a statute "should not be read in isolation from the context of the whole Act").

" '[I]dentical words used in different parts of the same Act are presumed to have the same meaning.' " *Brook Group, Ltd., v. Brown & Williamson Tobacco Corp.*, — U.S. —, —, 113 S.Ct. 2578, 2591, 125 L.Ed.2d 168 (1993) (quoting *Sullivan v. Stroup*, 496 U.S. 478, 484, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990) (internal quotation marks omitted)).

*Other principles.*

■ In addition, a statute should be read to avoid making any of its parts superfluous. *United States v. Nordic Village, Inc.*, — U.S. —, —, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). Also, repeals of statutory provisions by implication are strongly disfavored. *See, e.g., Traynor v. Turnage*, 485 U.S. 535, 547, 108 S.Ct. 1372, 1381, 99 L.Ed.2d 618 (1988).

■ Finally, Congress is deemed to have knowledge of rules promulgated under a statute and to approve them if subsequent legislation on the same subject does not revise them. *E.g., Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 382 n. 66, 102 S.Ct. 1825, 1841 n. 66, 72 L.Ed.2d 182 (1982); *Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1559 (Fed.Cir.1988) (" 'Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change.' ") (quoting *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978)).

*Discussion*

*Two types of judgments.*

■ The decision of the special master challenged by respondent here relied entirely on the opinion of this court in *Saunders*.

---

6. Vaccine funds are "appropriated." 42 U.S.C. § 300aa–15(j) (pre-Act cases); 26 U.S.C. § 9510 (1988 & Supp. III 1991) (Trust Fund established

for post-Act injuries, *i.e.*, for injuries caused by administration of a vaccine after the effective date of the Act, *i.e.*, post-October 1, 1988).

That decision, in turn, is based entirely on the proposition that the Act permits separate "judgments": one "on the merits," deciding whether and how much compensation may be awarded on the merits of the petition and, thereafter, another judgment as to a petitioner's attorneys' fees request.

*Saunders* concluded that the election to receive compensation for vaccine-related injuries or death under § 21(a), which is required by § 15(f)(1) as a condition for the payment of compensation, refers only to a judgment "on the merits," and thus that an election to reject a judgment that awards no compensation on the merits and to file a civil action does not bar the payment of compensation in the form of attorneys' fees. 26 Cl.Ct. at 1225.

The court in *Saunders* concluded that the government's reading of the literal terms of § 15(f)(1) and § 21(a) as requiring an election as a precondition to receiving compensation was "not an insubstantial argument; it has the force of plain language behind it," *id.* at 1224, but found a "difficulty" with this reading in § 15(e)(1), specifically, in the second sentence of § 15(e)(1), which states that if the *"judgment* of the [court] ... does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees...." § 15(e)(1) (emphasis added).

*Saunders* states that, "[t]aken in their ordinary and everyday sense, these words [in § 15(e)(1)] have to be understood to authorize the court or the special master to enter an award for attorneys' fees and costs *after* entry of judgment on the claim-in-chief." 26 Cl.Ct. at 1225.

The *Saunders* court also relied on the following statement in the legislative history of the 1989 amendments to the Act that: " 'the ... award for amounts to cover attorney's [sic] fees and costs is to be included *after* proceedings are complete.' " *Id.* at 1224 (quoting H.R.Conf.Rep. No. 386, 101st Cong.,

1st Sess. 511 (1989) U.S. Code Cong. & Admin.News pp. 1906, 3114) (emphasis added).

This court respectfully disagrees with the analysis in *Saunders.* The first sentence of § 15(e)(1) clearly *requires,* if compensation is being awarded on the merits of the petition, that the special master's compensation decisions on the § 11 petition and on the § 15(e)(1) attorneys' fees be made at the *same* time: *"In awarding compensation* on a *petition* filed under [§ 11] ... the special master or court *shall* also award *as part of* such *compensation* an amount to *cover*—(A) reasonable attorneys' fees, and (B) other costs, incurred in any proceeding on such petition." § 15(e)(1) (emphasis added).

It is hard to imagine a more direct statement mandating concurrent determination of both categories of compensation. *Cf. Mitchell II,* 29 Fed.Cl. 150, 152 n. 5 (recognizing that "[i]n a situation where compensation is awarded on the vaccine claim, respondent's argument opposing a separate attorney-fee compensation judgment would have more weight").

Also, the second sentence of § 15(e)(1), where the *Saunders* court identifies the purported "difficulty," does *not,* as *Saunders* states, authorize the entry of an award for attorneys' fees and costs "after entry of judgment on the claim-in-chief." 26 Cl.Ct. at 1225 (emphasis added). Only the underscored words dictate the conclusion reached by *Saunders.* These words, however, are not contained in § 15(e)(1) and thus represent merely *Saunders's* judicial gloss on the statute.

■ In context, it is clear that "judgment" is used in § 15(e)(1) as it was used before the 1989 amendments effected by § 6601(1)(2) of the Omnibus Budget Reconciliation Act of 1989, Title VI, Pub.L. No. 101–239, 103 Stat. 2286, 2290 (1989) (codified as amended at 42 U.S.C. §§ 300aa–1 to 34 (1988 & Supp. III 1991) to mean the "decision" of the initial decision-maker on the petition.[7] *See general-*

---

7. Before the 1989 amendments, the authority to issue a "judgment" was reserved to the Claims Court alone, upon *de novo* review of the special master's "report on the petition," unless there were no objections to the report. *See* Rules 18 and 19 of the Vaccine Rules, enacted by General Order No. 23 (effective Jan. 25, 1989). Thereafter, the special master was authorized to issue the initial "decision" on the petition, *see* § 12(d)(3)(A), and the clerk, not the court, entered the "judgment," pursuant to § 12(e)(3).

*ly Black's Law Dictionary* 841–44 (6th ed. 1990) (stating that the terms " 'decision' and 'judgment' are commonly used interchangeably"). For example, "confession of judgment" and a "stipulated judgment" refer to a *decision* stipulated by the parties and obviously made *prior* to "entry" of "judgment." *Id.* at 842. Similarly, a "judgment" may be either "final" *or* "interlocutory" for appeals purposes. *Id.* at 843. If interlocutory, it will not, by definition, be "entered" separately for appeals purposes.

 "Entry of judgment," as used in the Act, clearly is not identical, to the decision or judgment of the special master or the court. Instead, entry of judgment cannot occur until *after* such a decision or judgment, specifically, after the period for filing a motion for review by this court has run or been waived, or after this court has affirmed the special master's decision. Entry of judgment is accomplished by action of the *clerk,* not of the special master or court. *See* § 12(e)(3) ("In the absence of a motion [for review] or if the ... [c]ourt ... [affirms the] special master's *decision,* the *clerk* of the ... [c]ourt shall immediately *enter judgment* in accordance with the special master's decision") (emphasis added).

The use of the term "after" in the legislative history of the 1989 amendments to § 15(e)(1) can be read merely to state the obvious: that the court cannot make the attorneys' fees determination until it is known whether the petitioner has prevailed on the merits of the petition, *because the standard for awarding attorneys' fees depends on the outcome on the merits:* if compensation is awarded, reasonable attorneys' fees automatically are awarded; if not, the decision is discretionary, based on whether the petition was brought in good faith and had a reasonable basis. *See* § 15(e)(1). Also, in certain pre-Act cases, the amount of the merits award for certain categories of compensation may not be calculated until after the amount of the attorneys' fees award is determined because compensation for lost earnings, pain and suffering, and attorneys' fees and costs all are subject to the same combined total recovery ceiling of $30,000. *See* § 15(b).

The need to decide subsidiary compensation *issues* in a particular sequential order, however, does not necessitate the issuance of separate and sequential *decisions* or *judgments* on such issues, any more than a finding of actual damages in a tort action which is a prerequisite for the award of punitive damages must be made in separate trials or by separate sequential "decisions" or "judgments."

Had Congress intended to require a sequential litigation process, the Act itself demonstrates that it knew how to do so. *See* § 23(a) (requiring civil actions to be "tried in three stages."); *see also* § 23(b)–(d) (describing each of the three stages). Yet neither the statute nor the legislative history of the 1989 amendments expressly states any intention to require or permit sequential litigation, never mind sequential decisions, for merits and attorneys' fees determinations.

It is logical for the court or special master to complete "proceedings" on the petition under § 11 before finally deciding the awardability and amount of attorneys' fees and costs, since attorneys' fees must be paid for the entire period of litigating the "proceedings" on the petition. There is no need, however, for any delay between the decision on the merits and that regarding attorneys' fees and costs, because the amount of such expenses is ascertainable as soon as the proceedings on the petition are complete.

Other phrases within the same statement in the legislative history relied upon in *Saunders,* providing that the award of attorneys' fees and costs must be *"included"* after *"proceedings"* are completed, also strongly suggest that the attorneys' fees award either *may* or *must* be part of the decision on the merits. For example, the sentence preceding the sentence relied on in *Saunders,* referring to the amendments to § 15(b), states that these amendments "clarify" the "compensation" to be allowed in pre-Act cases, describes attorneys' fees and costs as "allowable compensation," and states that they represent no "change in policy from the Act—allowing only one award of attorneys' fees to be determined by the special master and entered *as* the court's judgment." H.R.Conf. Rep. No. 386, 101st Cong., 1st Sess. 511

(1989) U.S.Code Cong. & Admin.News pp. 1906, 3114 (emphasis added). These statements clearly suggest that there is to be only judgment and that attorneys' fees awards are to be included therein.

Nothing in the statute suggests that the "proceedings" that the Committee Report instructs should be completed before the attorneys' fees award refer to the period of litigation ending with entry of final judgment under § 12(c) or with a mandate following an appeal to the Federal Circuit, as permitted by Vaccine Rule 33(c). Rather, "proceeding[s]" is consistently used throughout the Act, as well as in the legislative history of the 1989 amendments, to refer only to the proceeding(s) on the petition before the special master culminating in the special master's decision pursuant to § 12(d)(3)(A), and thus prior to entry of judgment by the clerk pursuant to § 12(e)(3). *See, e.g.,* § 12(d)(3)(B) ("In conducting a *proceeding* on a petition a special master [may require various types of evidence].... There may be no discovery in a *proceeding* on a petition other than the discovery required by the special master.") (emphasis added); § 12(d)(3)(C) ("In conducting a *proceeding* on a petition a special master shall suspend the *proceedings* one time....") (emphasis added); § 12(d)(3)(D) ("If, in reviewing *proceedings* on petitions ..., the chief special master determines [there is] an undue burden ..., [he] may.... suspend *proceedings* for up to 540 days....") (emphasis added); § 13(c) ("For purposes of this section, the term record means the record established by the special masters ... in a *proceeding* on a petition filed under [§ 11]"); H.R.Conf.Rep. No. 386, at 515 (1989) U.S.Code Cong. & Admin.News pp. 1906, 3118 (stating that § 12(d) "clarifies that the Special Masters of the United States Claims Court have jurisdiction over the vaccine compensation *proceeding*") (emphasis added).

In short, nothing in the 1989 amendments or their legislative history or elsewhere in the Act or its legislative history, suggests an intention to alter the existing practice of issuing a decision and judgment on both compensation issues (the merits as well as attorneys' fees) at once,[8] or any intention to permit separate decisions, judgments, or appeals on attorneys' fees awards.[9]

The rules in effect at the time of the 1989 amendments required the special master to propose the attorneys' fees and costs award at the same time she proposed other "findings of fact and conclusions of law"—within 210 days of the filing of the petition, and only if objections were filed permitted a petitioner to submit a "supplemental itemized request for reasonable attorney's fees and other costs" incurred subsequent to the objection. *See* Old Vaccine Rules 18 and 19; *see also* Old Vaccine Rule 54(c) ("*Attorney's fees and other costs* may be allowed *and included in the judgment* in accordance with this General Order and applicable statutes, but costs against the respondent shall be allowed only to the extent permitted by law.") (emphasis added); Old Vaccine Rule 54(b) ("every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings"); Old Vaccine Rule 58(a) ("*Awarding Compensation.* Upon a decision by the judge that a party shall recover only a sum certain *or attorney's fees and other costs* or that all relief shall be denied, the clerk ... shall forthwith ... enter the judgment....") (emphasis added).

Had Congress intended to overturn these rules and procedures providing for attorneys' fees to be decided by the court at the same time that it directed the entry of judgment, *see* Old Vaccine Rule 19(c)(3) or (4), one might expect some indication of that intent in either the statute or the legislative history. *Johns–Manville Corp.,* 855 F.2d at 1559 ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when

---

8. See the court's vaccine rules in effect at the time of the 1989 amendments, Vaccine Rules of the United States Claims Court promulgated by General Order No. 23 (effective January 25, 1989) (Old Vaccine Rules).

9. *See* H.R.Rep. No. 247, 101st Cong., 1st Sess. 514 (1989) U.S.Code Cong. & Admin.News pp. 1906, 2240 ("This [technical chang[e]] represents no change in policy from the Act and is only intended to clarify the amount of damages.").

it re-enacts a statute without change.'") (quoting *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978)).

■ Even if we assume for the sake of argument that the statement in the legislative history relied upon in *Saunders* [10] *did* expressly mandate that the court or special master issue separate decisions or judgments on the two compensation issues, this statement would not be entitled to deference because, in cases where compensation on the merits is awarded, it conflicts with the plain language of the statute itself, to wit, the first sentence of § 15(e)(1), which clearly requires the attorneys' fees award decision to be made *"as part of"* the decision on the petition under § 11. In the event of a conflict between the statute and the legislative history, the statute obviously prevails. *See West Virginia Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 98, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991). Moreover, as *Saunders* itself recognized, "at best, the language [of the statement in the legislative history] is ambiguous and therefore insufficient to cast doubt upon the meaning of the statute." 26 Cl.Ct. at 1225.

That Congress did not, in fact, intend the 1989 amendments to change the existing practice of concurrent compensation decisions under § 15(e)(1) also may be inferred from the fact, noted in *Saunders, id.* at 1224, that the legislative history of the amend-

ments to § 15(e)(1) expressly described them as "technical" changes for "clarification," rather than as major substantive revisions. *See Finley v. United States*, 490 U.S. 545, 554, 109 S.Ct. 2003, 2009, 104 L.Ed.2d 593 (1989) ("Under established canons of statutory construction, 'it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.'") (quoting *Anderson v. Pacific Coast S.S. Co.*, 225 U.S. 187, 199, 32 S.Ct. 626, 630, 56 L.Ed. 1047 (1912)).[11]

The Act contains no express reference to a separate *attorneys' fees* petition. Nor does it suggest the possibility of: a separate motion for reviewing an attorneys' fees award, a separate appeal of the denial of such a motion, a "judgment" on such a petition, or an election to accept or reject such a judgment.[12] Neither does the legislative history.

The absence of any such reference strongly suggests that the Act did not contemplate a two-step process and that the Congress did *not* intend to authorize one by the referring to an "award" of attorneys' fees after a "judgment" in § 15(e)(1). As discussed above, the requirement in § 15(e)(1) that attorneys' fees "shall" be awarded *"as part of"* the compensation on the petition for damages for a vaccine-related injury or death, which necessitates a *concurrent* decision on attor-

---

10. " '[T]he ... award for amounts to cover attorney's [sic] fees and costs is to be included after proceedings are complete.'" ·26 Cl.Ct. at 1224 (quoting H.R.Conf.Rep. No. 386, at 514 U.S.Code Cong. & Admin.News pp. 1906, 3114).

11. The special master in *Mitchell I* concluded that respondent's reading of the 1989 amendments to § 15(e)(1) was invalid because it gave "no meaning" to the changes, a prohibited statutory construction. *Mitchell v. Secretary of the Dep't of Health & Human Servs.*, No. 90–1016V, 1993 WL 129634, at *2 (Fed.Cl.Spec.Mst. Apr. 5, 1993) (*Mitchell I*). However, this statement assumes that the amendments were intended to make a substantive change, which their legislative history expressly disavows. Clearly, no rule of "statutory" construction could require a court to read in a substantive change not expressed in the statute when the legislative history expressly states an intent not to.

12. *Saunder's* conclusion that there is a distinction between judgments on the merits and attorneys' fees awards or decisions for purposes of

§ 15(e)(1) or between judgments not awarding compensation on the merits and judgments making compensation awards for purposes of the election in § 21(a) (the fourth sentence of which prohibits the filing of a civil suit if there has been no election to file such action under the first sentence of § 21(a)) also is inconsistent with the legislative history of the original Act. The "Purpose and Summary" section of the 1986 House Report states that "Judgments *and awards* entered under the compensation program *must be expressly rejected* before other remedies may be pursued." H.R.Rep. No. 908, 99th Cong., 2d Sess. 3 (1986) U.S.Code Cong. & Admin.News pp. 6287, 6344 (emphasis added). It reiterates: "Part B of the system deals with the additional remedies that are available to vaccine-injured persons should they *elect to reject a judgment and award* made under the compensation program and to take action directly against a vaccine manufacturer." *Id.*

neys' fees, § 15(e)(1) (emphasis added), strongly suggests the opposite—that *one* compensation award decision would be made.

The requirement in § 15(b) that in pre-Act cases attorneys' fees and other categories of compensation must be subject to the same ceiling, also strongly suggests this. So does the mandate of § 12(d)(3)(A) that the special master "shall" issue a decision on the petition under § 11 "with respect to whether *compensation* is to be provided *under the Program* and the amount of such compensation." § 12(d)(3)(A) (emphasis added). In other words, all the evidence in the statute indicates that Congress intended the decision by the special master to be a decision on all forms of compensation allowed under the Program, not only on compensation "on the merits."

### Election to receive compensation

■■■ The statute unequivocally prohibits the payment of compensation "until an *election* has been made, or has been deemed to have been made, under … [§] 21(a) … to receive compensation." § 15(f)(1) (emphasis added).

Section 21(a) references two possible elections between mutually exclusive alternatives. If the "judgment" awarded compensation, the election is between filing a civil action and receiving the compensation. *See* § 21(a)(1). If the "judgment" did not award compensation, the election is between filing a civil action and accepting the judgment. *See* § 21(a)(2). Petitioner, having elected the alternative of filing a civil action, elected neither to receive compensation (on the merits *or* for attorneys' fees) nor to accept the judgment (on the merits *or* for attorneys' fees).

The court in *Saunders* concluded that the term "judgment" in § 21(a) referred to the judgment on the merits. If that is so, however, the election required under § 21(a) is an election with respect to the judgment on the merits. Even under this reading, the prerequisite to payment of compensation established in § 15(f)(1), which cross-references § 21(a), is that an election to receive compensation *under the judgment on the merits* have been made, *i.e.*, under § 21(a)(1).

Certainly, this election was *not* made in this case. Therefore, even under *Saunders*'s gloss on the term "judgment," the unequivocal language of § 15(f)(1) clearly bars "the payment of compensation."

Obviously, *Saunders*'s conclusion that there is an exception to § 15(f)(1) for attorneys' fees does not depend merely on narrowing the definition of *"judgment"* in § 15(e)(1) or § 21(a)(1) to exclude a judgment on attorneys' fees, but *also* on narrowing the definition of the term *"compensation"* in § 15(f)(1) to exclude attorneys' fees. That is because § 15(f)(1) does not even *use* the term "judgment." If attorneys' fees are "compensation" under § 15(f)(1), it bars the payment of such fees irrespective of whether separate judgments are permitted for attorneys' fees.

Moreover, under petitioner's reading of the Act, that an election is required only "if the judgment [on the merits] awarded compensation," *i.e.*, under § 21(a)(1), § 21(a)(2) would serve no purpose whatsoever. Under § 21(a)(1), an election to file a civil action (*i.e.*, to reject the judgment on the merits awarding compensation) concededly results in the negative consequence of receiving no compensation, including no attorneys' fees. Under petitioner's reading of § 21(a)(2), on the other hand, an election to *reject* the judgment on the merits and to file a civil action bears *no* negative consequences, because attorneys' fees nonetheless may be recovered. Thus, under petitioner's reading, a petitioner who is awarded no compensation would never have any reason to make an "election" under § 21(a)(2) to *accept* the judgment.

Accordingly, the § 21(a)(2) election is merely a meaningless formality under petitioner's reading. Because a statute should be read to avoid rendering any part thereof superfluous, *United States v. Nordic Village, Inc.*, —— U.S. at ——, 112 S.Ct. at 1015, the preferable interpretation is that § 21(a)(2) requires even a petitioner with a judgment not awarding compensation on the merits to elect between filing a civil suit in another forum and recovering his attorneys' fees in this one.

The requirement in § 15(f)(1) of an election under § 21(*a*) generally, rather than specifically under § 21(a)(1), also suggests that an election is required in *either* event, *i.e.*, whether the "judgment on the merits" awards compensation, pursuant to § 21(a)(1), or the judgment awards no compensation, pursuant to § 21(a)(2). In other words, § 21(a)(2) has not been read out of the statute for purposes of § 15(f)(1), as *Saunders* concludes.

### Compensation

 The critical question here, then, is not whether "judgment" in § 15(e)(1) refers only to a judgment on the merits, but whether attorneys' fees and costs are "compensation" under § 15(f)(1). If so, payment of such fees and costs is patently prohibited by the literal language of § 15(f)(1).

"Compensation" is not specifically defined in § 15 or elsewhere in the Act. Therefore, in determining whether compensation includes attorneys' fees, the court must look to the usage of that term elsewhere in § 15 and in the statute as a whole. *See National R.R. Passenger Corp. v. Boston & Maine Corp.*, —— U.S. at ——, 112 S.Ct. at 1401; *see also United States v. Thompson/Center Arms Co.*, —— U.S. ——, —— n. 5, 112 S.Ct. 2102, 2107 n. 5, 119 L.Ed.2d 308 (1992) ("normal canons of construction caution us to read the statute as a whole, and, unless there is good reason, to adopt a consistent interpretation of a term used in more than one place within a statute."); *NLRB v. Lion Oil Co.*, 352 U.S. 282, 289–90, 77 S.Ct. 330, 334, 1 L.Ed.2d 331 (1957).

Whether attorneys' fees and costs generally are treated as compensation under § 15 is obviously particularly relevant. Since § 15 is titled "Compensation," and subsection (e) thereunder is titled "Attorneys' fees," the headings of § 15 are fully consistent with that conclusion. A review of the use and meaning of the term "compensation" in the subsections of § 15 other than (e) also fully supports that conclusion.

Subsection (a) sets out four categories of "compensation for a vaccine-related injury or death" awarded under § 11: (1) actual unreimbursable expenses (post- and pre-judgment); (2) a $250,000 payment for a vaccine-related death, (3) loss of earnings, and (4) up to $250,000 for actual and projected pain and suffering and emotional distress. Consistent with the theory that attorneys' fees are one of many subsets of compensation, subsection (a) refers to subsets other than attorneys' fees.

Subsection (b) allows "[c]ompensation . . . for a vaccine-related injury or death associated with administration of a vaccine" before the effective date of the Act, but limits such compensation in the form of lost earnings, pain and suffering and attorneys' fees and costs, combined, to a total amount of $30,000. Thus, subsection (b) clearly assumes that attorneys' fees and costs are a "form" of "[c]ompensation . . . for a vaccine related injury or death" subject to the $30,000 compensation ceiling. (Since attorneys' fees and costs and the other forms of compensation permitted by subsection (b) are subject to the same total ceiling, this subsection also reinforces the conclusion, discussed above, that these compensation decisions are intended to be made simultaneously, and that the entitlement to, and amount of attorneys' fees are *not* to be decided after the entry of judgment on the other awards, as permitted under *Saunders.*)

Subsection (c) provides that "compensation" for "residential and custodial care and service expenses under subsection (a)(1) shall be sufficient to enable the compensated person to remain at home." Subsection (d) prohibits "compensation" in the form of punitive or exemplary damages or "compensation" for other than the health, education, or welfare of the injured person. These subsections reveal nothing about the intention to include attorneys' fees in the definition of compensation, but are not inconsistent with such a reading.

Subsection (g) prohibits "compensation . . . for any item or service" if another source of compensation coverage exists. The term "compensation" in that subsection appears to be used in a broad enough fashion to encompass attorneys' fees, but, in any event, is not inconsistent with such a reading.

Subsections (i) and (j) use the term in its broadest possible sense. Subsection (i) ("Source of compensation") identifies the source of "compensation under the Program." For pre-Act injuries, the source is the fiscal year appropriations authorized by subsection (j) ("Authorization"). For post-Act claims, the source is the trust fund established by 26 U.S.C. § 9510 (1988 & Supp. III 1991). There being no separate authorization in the Act for the payment of attorneys' fees and costs, it is evident that the term "compensation" in subsections (i) and (j) must encompass all funds authorized to be paid under the Program, including attorneys' fees and costs.

Subsection (f) is the provision at issue here. The term compensation appears several times therein. No use of the term is inconsistent with the theory that compensation encompasses attorneys' fees and costs. In § 15(f)(3), which exempts "[p]ayments of compensation under the Program" from the Balanced Budget and Emergency Deficit Control Act of 1985, 2 U.S.C. 900 *et seq.* (1988), just as in subsections (i) and (j), compensation clearly must be read to encompass attorneys' fees and costs. Similarly, the lump sum payment required in prospective cases by § 15(f)(4)(A) does not on its face appear to exempt attorneys' fees and costs.

While § 15(f)(4)(B) provides for disparate treatment of attorneys' fees and costs (these must be paid in a lump sum, whereas other compensation in pre-Act cases is to be paid in four equal annual installments), the separate proviso for attorneys' fees in this subparagraph appears to be an exception to the general rule in subparagraph (A) and, as such, evidence that when Congress intended attorneys' fees and costs to be excepted or treated differently from other forms of compensation it would do so expressly. The same principle is best illustrated by § 15(f)(2), the *only* exception expressly referenced in § 15(f)(1), the subsection at issue here, which permits the payment of certain damages incurred after the judgment *notwithstanding the lack of any election pursuant to § 21(a)*, but only up until the filing of such election (or the "deemed" filing if no election is filed within ninety days).

Clearly, "compensation" is used broadly throughout § 15 outside of subsections (e) and (f) to cover every possible form of monetary payment to petitioners from funds authorized under the Program or Act, including attorneys' fees and costs.

As noted above, the heading and location within § 15 ("Compensation") of subsection (e) ("Attorneys' fees") is the clearest possible indication that "attorneys' fees" are considered a subset of "compensation" under the Act.

The plain language of subsection (e)(1) reinforces this conclusion. It expressly states that attorneys' fees and costs are to be awarded "*as part of . . .* compensation." *See* § 15(e)(1) (emphasis added). Similarly, § 15(e)(2) allows the special master or court to "include" attorneys' fees associated with a petitioner's dismissed pre-Act civil action "*in awarding* compensation" on the petition under the program. *See* § 15(e)(2) (emphasis added). As also discussed above, the first sentence of § 15(e)(1) mandates clearly that attorneys' fees be decided or awarded at the same time as other compensation awards.

In sum, reading "compensation" in § 15(f)(1) to necessarily *exclude* attorneys' fees directly conflicts with the clear evidence in other provisions of the Act, *e.g.*, § 15(b), (e)(1) (first sentence), (e)(2), (e)(3), (f)(4), (i), and (j), that it was intended to *include* attorneys' fees. Nothing in the context of § 15(f)(1) requires any narrowing of the usual definition of the term so as to exclude attorneys' fees.

Reading the term "compensation" in the second sentence of § 15(e)(1) as encompassing attorneys' fees may, perhaps, create some confusion, if one reads it as allowing the special master, when she does not award "compensation," nonetheless (if "compensation" is defined to include "attorneys" fees), to *award* attorneys' fees.

Such a reading clearly should be avoided, if at all possible, pursuant to the presumption that Congress did not intend to legislate an absurd or meaningless result. *See American Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982).

In context, it is obvious that, when it first appears, in the second sentence of § 15(e)(1), "compensation" implicitly refers to the compensation described to in § 15(a) and (b), *i.e.*, compensation "on the merits" of the petition under § 11. If we supply this omitted but implicit modifier, the sentence makes perfect sense: "if the judgment ... does not award compensation [on the merits], the special master or court may award ... compensation to cover ... attorneys' fees." *See* § 15(e)(1). This reading is both logical within the context of § 15(e) and consistent with the use of the terms "compensation" and "attorneys' fees" elsewhere in § 15.

Also, the fact that "compensation" appears to refer to compensation "on the merits" and to exclude attorneys' fees the first time it appears in each sentence of § 15(e)(1) does not require that it be given a similarly narrow reading where the context does not require it, such as in § 15(f)(1) or § 21(a)(1). A narrow reading is demanded by the context of § 15(e)(1), the entire purpose of which is to deal with the subcategory of attorneys' fees. In contrast, § 15(f)(1) and § 21(a)(1) do not reference attorneys' fees, and nothing in § 15(f)(1) or § 21(a)(1) creates any inference that "compensation" is being used narrowly there to exclude attorneys' fees.

Indeed, there is no more textual basis in § 15(f)(1) or § 21(a)(1) for excluding *attorneys' fees* from the broad definition of compensation generally used in § 15, *e.g.*, § 15(i), (j), than there is for excluding any *other* specific form of compensation enumerated within § 15, *e.g.*, pain and suffering damages, or medical expenses, from the election requirement.

■ Principles of statutory construction require a consistent interpretation of the identical statutory term. *U.S. v. Thompson/Center Arms Co.,* — U.S. at — n. 5, 112 S.Ct. at 2107 n. 5. Under this rule, "compensation" in § 15(f)(1) and § 21(a)(1)

must be read to mean what it does in other provisions where it is not contextually required to be qualified—*all* forms of compensation that may be paid under the Act pursuant to the authority of § 15(i) and (j).

Obviously, it makes far more sense to eliminate any ambiguity in § 15(e)(1) by reading compensation therein to include the qualifier "on the merits" *once*, than to read that qualifier into the definitions of compensation in *both* § 15(f)(1) and § 21(a)(1), as must be done to reach the result in *Saunders*.

Such a reading of compensation in § 15(e)(1) does *not* require a similar reading of compensation in § 15(f)(1), because §§ 15(e)(1) and (f)(1) are not analogous provisions. Section 15(e)(1) refers to *awards* of compensation, whereas § 15(f)(1) refers to *payments* of compensation. Also, § 15(e)(1) is directed to the courts, whereas § 15(f)(1) appears to be directed to the agency actually making the "payment," *i.e.*, the Department of Health and Human Services.[13]

In sum, the language of § 15(f)(1), § 21(a)(1), § 15(i), and § 15(j) is unambiguous.[14] If there is any ambiguity in § 15(e)(1) it can reasonably be resolved by an interpretation of § 15(e)(1) that is consistent with the statutory context and creates no conflict with the foregoing provisions. Resort to the evidently ambiguous[15] legislative history of § 15(e)(1) is thus unnecessary. Moreover, review of such history discloses no support either for the proposition that the word "compensation" in § 15(f)(1) and § 21(a)(1) was intended to exclude compensation in the form of attorneys' fees and costs or for the proposition that petitions for attorneys' fees and costs could be filed months or even years after the decision on the merits of the petition, as is permitted under the current vaccine rules. *Cf. Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766

---

**13.** Thus, even if § 15(e)(1) is read to allow attorneys' fees to be omitted from an *award*, this would not necessarily dictate that attorneys' fees be excepted from the express § 15(f)(1) bar on *payment* of compensation prior to an election to receive it.

**14.** See *Saunders,* 26 Cl.Ct. at 1224 (noting that respondent's statutory argument that § 21(a) plus § 15(f)(1) bar all compensation *including attorneys' fees* unless there is an election to accept the judgment "is not ... insubstantial; it has the force of plain language behind it").

**15.** *See Saunders,* 26 Cl.Ct. at 1225.

(1980) (If the legislative history is inconclusive, even if parts are inconsistent with the statutory terms, the legislative history should not be relied upon to supply a provision not expressly stated in the statute.)

Even if these provisions *were* ambiguous, however, the court is bound to read them narrowly in the government's favor, because they are statutes placing limitations on the government's waiver of sovereign immunity. *See Library of Congress v. Shaw*, 478 U.S. at 318–19, 106 S.Ct. at 2963–64; *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).

*The Vaccine Rules*

The court in *Wells* relied on the Vaccine Rules as "further support" for the "contention that a special master may award attorney's fees and costs separately from a judgment on the merits, and that attorney's fees and costs may be awarded even if a petitioner rejects the judgment of the special master." *Wells v. Secretary of the Dep't of Health & Human Servs.*, 28 Fed.Cl. 647, 662.[16]

*Wells* specifically cited Vaccine Rule 13, which states that "[a]ny request for attorneys fees and costs pursuant to [section 15(e) ] ... shall be filed no later than 21 days *following* the filing of an election pursuant to Vaccine Rule 12" (emphasis added). It also provides: "The decision of the special master on the fee request *shall* be considered a *separate decision* for purposes of Vaccine Rules 11 and 18." Vaccine Rule 13 (emphasis added.) [17] The other vaccine rules dealing with attorneys' fees requests are described below.

Vaccine Rule 11(a) paraphrases the requirement in § 12(e)(3) of the Act that, if no motion for review is filed within 30 days of the special master's decision, or if the parties file a notice before then stating that they will seek no such review, "the clerk ... *shall* immediately enter judgment in accordance with the special master's decision." § 12(e)(3) (emphasis added). This rule, which clearly applies if there has been a decision to award compensation and no decision on attorneys' fees, ignores the express requirement in the first sentence of § 15(e)(1) that the special master ("shall") award such fees "as part of" the compensation award.

Also, notwithstanding the first sentence of § 15(e)(1), Vaccine Rule 34 permits a request for attorneys' fees and costs to be made as late as twenty-one days following the filing of an election pursuant to Rule 11(a) (§ 21(a) of the Act).[18] Thus, under petitioner's reading, the rule would permit an attorneys' fees request to be filed 111 days after final "judgment on the merits" was entered (21 days plus the 90 days permitted for the § 21(a) election), at least 171 days after final judgment if a motion for review is filed (a motion for review must be filed within thirty days of a decision and the response within thirty days thereafter) and at least 261 days thereafter if an appeal is filed (an appeal brief is due within sixty days after the date the appeal is docketed, with additional time permitted for a response and reply, *see* Fed.Cir. Rule 31).

Vaccine Rule 34 also authorizes a special master's attorneys' fees determination to be treated as a "separate decision" for purposes of Vaccine Rules 1 (Scope of Rules), 6 (Status

---

16. It should be noted that the only changes mandated by the 1989 amendments with respect to the Vaccine Act rules were "revisions in such rules to provide for a non-adversarial, expeditious, and informal process for the resolution of petitions." H.R.Rep. No. 386, at 511 (1989) U.S.Code Cong. & Admin.News pp. 1906, 3114; *see also* § 12(d)(2)(A). There is no suggestion in the legislative history of these amendments of revising the rules to permit or require separate petitions, proceedings, awards, decisions, judgments, elections, motions for review, or appeals with respect to attorneys' fees. Indeed, such changes result in duplicative proceedings and thus appear to be positively inconsistent with the

legislative goals expressed in the legislative history.

17. Section 11(b)(2) prohibits the filing of more than one "petition ... with respect to each administration of a vaccine." Thus, if the attorneys' fees request is deemed a separate "petition" under the Act, for purposes of § 12, it would appear to be barred by § 11.

18. Since Rule 11(a) does not refer to elections, the correct reference must be to Rule *12(a)*, which does.

Conferences), 8 ("Taking of Evidence and Argument; Decision"), and 13 (discussed above), but excepts a motion for review of such a decision from "the time limitations of Rules 6–7," and limits "memoranda filed pursuant to Rules 2–3." [19] Thus, Rule 34, under petitioners' reading, permits award decisions on attorneys' fees petitions to be appealed separately both to this court and to the Federal Circuit.

Vaccine Rule 10(b) allows the special master to defer any ruling on the § 15(b) compensation award (for attorneys' fees, pain and suffering, and lost earnings, which together are subject to the same total ceiling of $30,000) and to combine the § 15(b) decision with § 15(e)(1) and the Rule 13 attorneys' fees decision. Because under Rule 13 the attorneys' fees decision need not be issued until after entry of judgment, Rule 10(b) also conflicts with the requirement of simultaneous attorneys' fees and merits compensation awards under the first sentence of § 15(e)(1) and the time limits for a special master's decision on compensation established by § 12(d)(3)(A).

 To the extent they conflict with the plain language of the statute, the Vaccine Rules are entitled to no deference. *Cf. K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 294, 108 S.Ct. 1811, 1819, 100 L.Ed.2d 313 (1988) (regulation that conflicts with plain language of statute is invalid). To the extent they purport either to extend the statutory time periods for filing provided in the Act for issuing decisions or filing motions for review, or to waive statutory limitations on the Congress' waiver of sovereign immunity, they are without effect. *See Widdoss v. Secretary of the Dep't of Health & Human Servs.,* 989 F.2d at 1177 (court vaccine rule cannot be used to escape a jurisdictional time limitation set by the Act).

It is difficult to understand how the foregoing rules—which, in permitting two step attorneys' fees procedures, increase by po-tentially one hundred percent the number of proceedings before the special master and its two reviewing courts, and vastly extend the express time deadlines for deciding petitions under the Act—can be reconciled with the requirements of the Act (and the legislative history of the 1989 amendments) that these rules should "provide for a less-adversarial, *expeditious,* and *informal* proceeding for the resolution of petitions." § 12(d)(2)(A) (emphasis added); *see also* H.R.Conf.Rep. No. 386, at 511.

*Jurisdictional authority.*

Another important reason exists for construing the Act as respondent urges, and refusing to read into it any authority to engage in two step adjudications.

The statute expressly authorizes this court only to review and enter judgment on the decision of the special master on the petition "on the merits" under § 11. *See* § 12(d)(3)(A). "Petition" is defined in § 12(d) ("Special masters") as "a petition under [section 11] of this title." § 12(d)(1).[20] The special master must ("shall") issue "a *decision* on *such* petition" within the statutory time frame and *"[t]he decision* may be reviewed by [this court] in accordance with [§ 12(e) ]." § 12(d)(3)(A) (emphasis added). "Upon issuance of *the ... decision,"* the parties have 30 days to file a motion for review in this court. § 12(e)(1) (emphasis added). *See generally Freytag v. Commissioner, IRS,* 501 U.S. 868, ——, 111 S.Ct. 2631, 2651, 115 L.Ed.2d 764 (1991) (noting that use of definite article "the" in statute narrows the class to the members that are specifically referenced) (Scalia, J., concurring in part).

 Thus, the court's authority clearly is limited to reviewing decisions on petitions under § 11. It has no express statutory authority to review decisions on requests for attorneys' fees independently from such decisions. The only possible justification for exercising jurisdiction to review such fee re-

---

**19.** The cross-reference to Rules 6–7 also appears to be incorrect, since Rules 6–7 contain no time limits; the correct cross-reference appears to be Rule 19.

**20.** Section 12(d)(1) does *not* refer to any "petition under § 15(e)(1)." Outside of § 15(e)(1), the statute does not refer to attorneys' fees "petitions" *or* "requests." The Vaccine Rules term the motion a "request," not a petition. *See, e.g.,* Vaccine Rule 13.

quests exists when the special master's "decision" reviewed by this court *includes* the attorneys' fees determination, *i.e.*, as clearly contemplated by at least the first sentence of § 15(e)(1). If the attorneys' fees' request is severed from the petition on the merits, however, as the Vaccine Rules apparently permit, and *Saunders* expressly allows, this court's authority to decide an appeal of a decision on that issue alone is open to question.[21]

The jurisdictional authority of this court, as has been repeatedly held, must be expressly provided by statute, and that statute must be strictly construed. See *United States v. Testan*, 424 U.S. at 397–98, 96 S.Ct. at 952–53. Jurisdictional authority cannot be supplied or extended by court rules, such as the vaccine rules promulgated by this court under the authority of § 12(d)(2). *See Widdoss*, 989 F.2d at 1177–78; *see also United States v. Sherwood*, 312 U.S. 584, 589–90, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941).

*Policy considerations.*

1. *Practicality.*

The court is aware of no reason why a special master could not decide the amount of attorneys' fees and costs at the same time he or she decided liability, or, if the amount of damages is determined later, concurrently with the damages determination, and prior to or concurrently with judgment, as was done by this court under the Old Vaccine Rules, since at the close of the record, or upon filing the motion for review or opposition, all attorneys' fees and costs should be ascertainable.

2. *"Rights" to file civil action, to attorneys' fees.*

The policy goals expressed by petitioners and the courts in *Saunders* and *Mitchell I*— to ensure that a petitioner's counsel is paid by the government in every case, so as not to chill the petitioner's "right" to file a civil action—appear to conflict with the articulated policy of the Congress in enacting the

Program—to protect vaccine manufacturers (and, subsequently, administrators) by instituting *disincentives* to filing expensive, inefficient, and time consuming civil actions. See 135 Cong.Rec. H9729 (daily ed. Oct. 15, 1990) (statement of Representative Waxman) ("The committees have always intended that there be no double recovery or parallel actions ... and have always understood that a petitioner who accepts compensation has given up any similar potential action in other courts. Petitioners are given the opportunity to reject compensation if they wish to pursue a civil action, an opportunity that provides significant advantage in knowing the outcome in one venue before choosing whether to pursue action in another. Any attempt both to receive compensation and to pursue remedies would be impermissible overreaching.")

In short, the "Hobson's choice" bemoaned by petitioner (of being required to file under the Act prior to filing a civil action and yet not being entitled to attorneys' fees if such a civil action is elected) may be *exactly* what Congress intended. The "unjust" result complained of by petitioner is based on the misconceptions that a petitioner's "right" to file a civil action may not be circumscribed and that petitioner has an absolute "right" to attorneys' fees under the Program. In fact, Congress in the Program has severely limited the right to file civil actions, see, e.g., § 21(b), § 23, and attorneys' fees, in cases where no other compensation is awarded, are discretionary and not mandatory under § 15(e)(1).

The court in *Mitchell II* relies on the discussion of legislative intent in the special master's decision and, specifically, the statement by the special master "noting the intent of Congress to " 'make adequate provision for attorneys' time ... in nonprevailing good faith claims' " while simultaneously allowing petitioner to " 'pursue whatever additional remedies [ ... ] available under applicable [state] law.' " *Mitchell II*, 29 Fed.Cl. 150,

---

[21] This issue has not been squarely decided by the Federal Circuit. However, the cases exercising such jurisdiction necessarily must have assumed such jurisdiction exists. *See, e.g., Saxton v. Secretary of the Dep't of Health & Human Servs.*, 3 F.3d 1517, 1517–18 (Fed.Cir.1993). *But*

*see Christianson v. Colt Indus. Operating Corp.*, 822 F.2d 1544, 1560 (Fed.Cir.1987) (court's exercise of jurisdiction not precedential on existence of jurisdiction unless jurisdictional issue was before the court), *rev'd on other grounds*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).

153, n. 7 (emphasis added). The critical words obviously, are those emphasized, because they suggest that Congress intended that attorneys' fees be paid in nonprevailing cases even when the petitioner elects to file a civil suit under state law.

Unfortunately, the underscored words (*Mitchell II* does not cite their source) do not appear in the legislative history. The special master incorrectly cites to the same page—page 24—for the two statements linked by the emphasized words. *Mitchell I,* 1993 WL 129634, at *3. The two propositions set out as corollaries in *Mitchell II* in fact appear *two pages apart* in the legislative history, at pages 22 and 24 of the House Report, within discussions of different parts of the legislation. H.R.Rep. No. 908 at 22, 24, U.S.Code Cong. & Admin.News 1986, pp. 6287, 6362, 6364. The reference, on page 22, to providing for attorneys' fees in nonprevailing cases, is contained in the section of the report discussing Part A, § 2115(d), amending § 15(e) of the Act, dealing with attorneys' fees. The reference, two pages later, to filing a civil action is contained in the introduction to Part B ("Additional Remedies") of the legislation, discussing the amendments to §§ 21–23 of the Act.

Moreover, the *full* sentence on page 24 in which the cited phrase appears states: "Should a petitioner choose to reject the judgment and award of the Special Master and the court, he or she is free to pursue whatever additional remedies may be available under applicable law." *Id.* at 24. Thus, the authority to file a civil action is not linked in the Report with any right to attorneys' fees for nonprevailing petitioners, but rather to the requirement to file an election to reject *both* the "judgment" *and* "award." *See supra,* pp. 50–51. The House Report also states that an election must be filed "whether [the judgment] awarded compensa-

tion or not," and "even if the court has refused to award compensation." H.R.Rep. No. 908 at 24. It also makes clear that the "judgment" as to which an election must be made is the "judgment denying compensation" and that the "award" requiring an election is the "compensation award." *Id.*

In short, even the portions of the legislative history relied upon in *Mitchell I* and *Mitchell II* establish Congress' clear intention that "judgment" in § 21(a) refers to a single judgment denying all forms of compensation, and that an election be filed as a prerequisite to a civil suit even if the judgment awarded no compensation. See § 21(a) (fourth sentence).[22] The election requirement in § 21(a) clearly was intended to apply whether there was an award of compensation (pursuant to § 21(a)(1)) *or* a judgment denying compensation (pursuant to § 21(a)(2)) when determining whether the bar on civil action absent an election (in the fourth sentence of § 21(a)) applies. Thus, it becomes extremely difficult to argue that under the parallel provision prohibiting certain action without an election under § 21(a), in § 15(f)(1), only *one* of the § 21(a) elections is relevant.

 There is no evidence in the legislative history of the Act that Congress intended to encourage every unsuccessful petitioner in this court to file a civil action. Rather, the basic purpose of the Program was to encourage election of the Program *over* the civil system by establishing a more generous recovery system than that possible in traditional civil tort actions, through elimination of the tort requirements of proving actual causation, negligence, and liability, the establishment of a single payor system, and the authorization of less formal proceedings. H.R.Rep. No. 908, at 12–13, U.S.Code Cong. & Admin.News 1986, pp. 6287, 6353–6354.[23]

---

22. The fourth sentence of § 21(a) states

If a person elects to receive compensation under a judgment of the court in an action for a vaccine-related injury or death associated with the administration of a vaccine before October 1, 1988, or is deemed to have accepted the judgment of the court in such an action, such person may not bring or maintain a civil action for damages against a vaccine administrator or

manufacturer for the vaccine-related injury or death for which the judgment was entered."

42 U.S.C. § 300aa–21(a).

23. The House Report elaborates

[The Program] is intended to compensate persons with recognized vaccine injuries without requiring the difficult individual determinations of causation of injury and without a dem-

The burden of proof under the Program "differs" because it is lower, not, as petitioners suggest, higher, than in civil proceedings. Cases that are unsuccessful on the merits under the program are therefore unlikely to succeed thereafter as private civil actions, or as defendant contends, to be "baseless" and, as such, not deserving of public subsidy in the form of attorneys' fees and costs. Thus, it is incorrect to say that denying the recovery of attorneys' fees to a petitioner who rejects an adverse decision "would *inappropriately* penalize petitioners for participating in the Vaccine Program." *Waddell,* 1991 WL 33250, at *1 (emphasis added).

Petitioners' reading of § 21(a) results in a far more "inappropriate" penalty, since a petitioner who was found to be harmed by a vaccine and to be entitled to compensation under the Act—but who elected to file a civil action because she considered the amount of the award insufficient—could *not* recover attorneys' fees, whereas a petitioner *not* found to be entitled to compensation, under the more favorable liability standards in the Program, who decided to file a civil action, *could* recover such fees. Under such a reading of the statute, the Program effectively subsidizes only petitioners with unmeritorious civil actions. This can hardly have been Congress's intent.

### 3. *Conflict of interest.*

 There also is no evidence that Congress considered, was persuaded by, or enacted into this Act, the policy argument made by the court in *Klein,* No. 91–1548V, slip op. at 1, and by the special masters in *Mitchell I,* 1993 WL 129634, at *3–*4, and *Roberson,* 1993 WL 120639, at *2–*3, that a petitioner should not be required to elect between attorneys' fees and a civil action, because this would create a "potential conflict of interest" between a petitioner and counsel. As a policy argument, even if persuasive, it is not

within this court's power to implement. *See Beck v. Secretary of the Dep't of Health & Human Servs.,* 924 F.2d 1029, 1033–34 (Fed. Cir.1991) (rejecting conflict of interest argument as grounds for ignoring combined cap in § 15(b), which pits attorneys' interest in fees against petitioner's interest in a lost earnings award, as a "policy argument[ ] [that] may be implemented only by Congress").

Admittedly, the prohibition in § 15(e)(3) on charging attorneys' fees in addition to those awarded as compensation under § 15(e)(1), *see Beck v. Secretary of the Dep't of Health & Human Servs.,* 924 F.2d at 1037, can create difficulties for attorneys in these cases if the petitioner elects a civil action. However, lawyers have long had to engage in risk assessment based on the likelihood of prevailing in proposed litigation, *e.g.,* in order to decide whether to accept a case on a contingency basis. It is not clear that Congress did not intend the same considerations to apply to attorneys contemplating representation of vaccine petitioners, or that it did not intend, by permitting no attorneys' fees to nonprevailing litigants, to discourage litigation under the Act.

### 4. *Encouragement of legal representation.*

The Office of the Special Master has argued that the volume and complexity of vaccine cases requires that petitioners be represented by attorneys and, therefore, that the use of legal counsel should not be discouraged by disallowing attorneys' fees for litigants electing to file civil actions. *See Mitchell I,* 1993 WL 129634, at *3 ("It is exceedingly clear that without participation of private counsel, the processing of these cases will grind inexorably to a halt.") (Golkiewicz, Chief Special Master).

onstration that a manufacturer was negligent or that a vaccine was defective....
The Committee anticipates that the speed of the compensation program, the low transaction costs of the system, the no-fault nature of the required findings, and the relative certainty and generosity of the system's awards will divert a significant number of potential plaintiffs from litigation.

The Committee also recognizes that because of many States' standards of proof of liability, many vaccine-injured persons are presently without legal remedy under current tort law. The Committee anticipates that many of these persons will be compensated for their injuries under the compensation system.
H.R.Rep. No. 908, at 12–13.

It is not clear that Congress viewed these cases as so complex as to invariably require legal counsel. Further, if separate proceedings for attorneys' fees were eliminated, the volume of litigation and paperwork would be reduced substantially. The suggestion that the prospect of not being able to recover attorneys' fees after rejecting an adverse decision "could cause petitioners merely to go through the motions in the Program proceeding, to avoid racking up potentially non-compensable expenses, "while still preserving their potential tort claims." *Roberson*, 1993 WL 120639, at \*4; *see also Mitchell I*, 1993 WL 129634, at \*4, is unpersuasive and inconsistent with the theory underlying the Program, which presumes most petitioners want to recover compensation through the Program and be done with the legal process and do not want their award later (in a subsequent more protracted and more expensive civil suit) rather than sooner. In addition, petitioner's counsel are under an ethical obligation zealously to pursue their clients' claims. *See, e.g., Model Code of Professional Responsibility*, Canon 7 (1981). Even if the foregoing policy considerations were convincing, there is no evidence that Congress has considered them or enacted them into law.

Rather, there are many indications that Congress anticipated that the vaccine cases would *not* be terribly complex and that substantial legal expertise and effort would *not* always be necessary. *Cf.* H.R.Rep. No. 908 at 22 ("Because of the straightforward nature of proceedings, the Committee does not anticipate that reasonable attorneys' fees will be large."); *Saxton v. Secretary of the Dep't of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed.Cir.1993) ("A suit under the Act was meant to be, and is, a straightforward proposition ... we do not think that suits under the statute can be viewed as litigation in the traditional sense") (quoting *Zeagler v. Secretary of the Dep't of Health & Human Servs.*, 19 Cl.Ct. 151, 153 (1989). Indeed, the vaccine rules in effect at the time of the 1989 amendments to the Act permitted not only *pro se* representation, but also representation by "immediate family" members, whether or not they had any legal skills or qualifications. See Old Vaccine Rule 81(d)(7) (1988).

Also, the statute authorizes the special master to disregard many of the formalities of the adversary system that ordinarily necessitate legal representation by, *e.g.*, eliminating discovery except as required by the special master and authorizing written hearings. *See* H.R.Rep. No. 908 at 36–37 U.S.Code Cong. & Admin.News 1986, pp. 6287, 6377, 6378 (noting that system is "no-fault" and "non-adversarial").

### Conclusion

Respondent's motion for review requests reversal of the special master's attorneys' fees decision because it "erroneously *awarded* compensation for attorneys' fees" to petitioner. Respondent's Motion for Review at 1 (emphasis added). Whether or not § 15(f)(1) bars an *award* of attorneys' fees or other compensation pursuant to § 15(e)(1) prior to an election, it clearly bars the *payment* of such compensation until an election to receive compensation under § 21(a) is filed.

To the extent the special master's "award" of attorneys' fees and costs purports to order the *payment* of such fees and costs, pursuant to § 12(a),[24] it rests on an erroneous conclusion regarding the proper legal interpretation of § 15(f)(1) and § 21(a)(1). The special master has no authority to order an executive agency to pay out money contrary to the clear direction of a statute. *Cf. Office of Personnel Management v. Richmond*, 496 U.S. 414, 424, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990). Therefore, the special master's legal conclusion is set aside by this court pursuant to § 12(e)(2)(B). In light of the foregoing, the special master's "award" of attorneys' fees is of no force or effect.

Pursuant to § 12(e)(2)(C), the court orders that petitioner's request for payment of attorneys' fees be remanded to the special master for dismissal in accordance with the conclusion set out herein. The clerk of the

---

24. *Section 12(a) provides*
The United States Claims Court may issue and enforce such orders as the court deems necessary to assure the prompt *payment* of any compensation awarded.
§ 12(a) (emphasis added).

court thereafter shall enter judgment for the respondent.